**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
No. 94-60444

BARBARA ALLEN, et al.,

                                        Plaintiffs-Appellants,

versus

R & H OIL & GAS COMPANY, FARRAR OILFIELD SERVICE
AND EQUIPMENT CO., and TRI-STATE OIL SERVICES, INC.,

                                        Defendants,

TRI-STATE OIL SERVICES, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____
(August 29, 1995)

Before  JOLLY, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The 512 plaintiffs of a joint, state-law tort action (the "Allen plaintiffs" or "plaintiffs") appeal the removal of their claims to federal court.  They contend that the district court erred in finding federal subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship), because it improperly "aggregated" their claim for punitive damages as a "whole" in reaching the $50,000.01 amount-in-controversy mark for each plaintiff.  They also claim the district court misapplied the standard for assessing the amount in controversy when plaintiffs

challenge defendants' assertion of removal jurisdiction. Because we find that each plaintiff has an undivided claim for the full amount of the alleged punitive damages, which on the face of the complaint more likely than not exceeds the jurisdictional amount, we affirm.

## I.

On May 20, 1990, an oil and gas well exploded near the town of Heidelberg, Mississippi, causing evacuation of the area. According to the plaintiffs, who are local residents, they suffered property damage and wide-ranging, physical and mental injuries from the explosion and release of toxic fumes.

Subsequently, the 512 Allen plaintiffs jointly filed suit in Mississippi state court against R & H Oil & Gas Company, Farrar Oilfield Service and Equipment Company, and Tri-State Oil Services, Inc. (collectively, the "defendants"), which operated the well. The Allen plaintiffs' individual claims))the suit is not a class action))are based upon theories of negligence and strict liability, and they seek compensatory and punitive damages. No specific amount of damages was pled.

The defendants, which are Louisiana corporations, petitioned for removal to federal court, asserting that there was complete diversity of citizenship between the set of plaintiffs and the set of defendants. See 28 U.S.C. §§ 1441, 1446. They also contended, in conclusory terms, that the $50,000.01 amount-in-controversy requirement was met. Removal was granted.

The plaintiffs, in the discovery phase of the case before a magistrate judge, then moved to remand on the ground that the amount-in-controversy requirement was not met. The gravamen of their motion was that the defendants had failed to present any evidence that showed that each plaintiff's claim exceeded § 1332's $50,000 requirement.

The defendants, in response, made two arguments. First, they contended that the alleged punitive damage award could be assessed against each individual plaintiff. In the alternative, they argued that an exception to the amount-in-controversy's non-aggregation principle applied, so that each individual plaintiff's potential punitive damage award could be aggregated and applied to the $50,000 requirement.

After considering the parties' memoranda, the magistrate judge, in a "bare bones" order, recommended denying remand. In upholding the order, the district court reasoned that the aggregation of the potential punitive damages award was proper, as each plaintiff shared in a common and undivided interest in the claim.[1]

The court also considered the plaintiffs' motion to "clarify" their complaint by amendment to seek explicitly less than the requisite amount in compensatory and punitive damages. This motion

---

[1] The court's full reasoning is as follows:

The 512 plaintiffs elected to file this case as a single action against defendants and, while their claims for compensatory damages are separate and divisible, the court, giving due consideration to the nature and purpose of punitive damages, concludes that the same cannot be said as to plaintiffs' punitive damage claim. Punitive damages are sought for a single wrong to the plaintiffs who thus have a common and undivided interest in any punitive damages award.

3

likewise was denied on the ground that such post-petition amendments were mooted by the finding that the punitive damages alone met the requisite amount.  Finally, the district court, recognizing the split among district courts in this circuit on the issue of aggregation of punitive damages, certified this case for immediate appeal via 28 U.S.C. § 1292(b).

## II.

Removal is controlled by 28 U.S.C. § 1441, which provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ."  Such original jurisdiction exists, for example, if there is "diversity of citizenship," such as where the suit is between citizens of different states and the amount-in-controversy exceeds $50,000.  28 U.S.C. § 1332.  Here, plaintiffs do not dispute diversity but question the application of the amount-in-controversy standard.[2]

---

[2]  The dissent notes that on its face, the complaint alleges that one of the defendants, Farrar Oilfield Service and Equipment Co. (Farrar"), has its principal place of business in Mississippi.  If that were so, there would be no diversity of citizenship.  See 28 U.S.C. § 1332(c)(1)(deeming "citizenship" for corporations to be either state of incorporation or state where defendant has its principal place of business).  The defendants, however, argued in the district court that Farrar's principal place of business is not Mississippi.  And, while making no explicit findings of fact, the district court implicitly agreed by finding subject-matter jurisdiction.  No party continues to press this issue.  Accordingly, while we recognize our duty to determine jurisdiction sua sponte, if necessary, see Mosley v. Cozby, 813 F.2d 659 (5th Cir. 1987) (per curiam), we see no reason to question this implicit finding.

4

A.

The Supreme Court has long interpreted § 1332's phrase "matter in controversy" not to allow multiple plaintiffs to add together "separate and distinct demands, unite[d] for convenience and economy in a single suit," to meet the requisite jurisdictional level. See Snyder v. Harris, 394 U.S. 332, 336 (1969) (quoting Troy Bank v. A.G. Whitehead & Co., 222 U.S. 39, 40 (1911)); Zahn v. International Paper Co., 414 U.S. 291, 301 (1973) ("[O]ne plaintiff may not ride in on another's coattails.") (citation omitted).[3]  The general rule is that each plaintiff who invokes diversity of citizenship jurisdiction must allege damages that meet the dollar requirement of § 1332.

"Aggregation" of damages allegedly owed to separate plaintiffs, however, may be permitted in the limited situation where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." Snyder, 394 U.S. at 335.[4] Unfortunately, the "common and undivided" test retains an amorphous quality.  In applying this standard, many courts have

---

[3]  But see Free v. Abbott Labs. (In re Abbott Labs.), 51 F.3d 524 (5th Cir. 1995) (holding that under a plain meaning analysis, the Judicial Improvements Act of 1990, as codified in part at 28 U.S.C. § 1367, overrules Zahn in the class action context), suggestion for rehearing en banc filed.

[4]  See Pinel v. Pinel, 240 U.S. 594, 596 (1916) (no aggregation of claims to shares of an estate arising from one will);  Troy Bank, 222 U.S. at 39 (aggregation allowed for enforcement of state law vender's lien as that claim was single and undivided);  Clay v. Field, 138 U.S. 464, 479-80 (1891) (no aggregation for claim of dower and partnership profits arising from one tract of land); Eagle Star Ins. Co. v. Maltes, 313 F.2d 778, 780 (5th Cir. 1963) (examining general rule);  see generally 1 James W. Moore, Moore's Federal Practice ¶ 0.97[3], at 917 (2d ed. 1995) ("Basically, aggregation is allowed when the plaintiffs unite to assert a 'common,' 'joint,' 'integrated' or 'undivided right.").

failed to eschew labels.  And stating the maxim is far easier than determining the principles that undergird it.  The standards that have developed in this area largely have their origins in pre-Federal Rules caselaw and take their modern day form by only judicial application.  Accordingly, we address the recognized guidelines that so far have evolved before applying them to the punitive damages claim here.

Courts generally agree that the plaintiffs' claims of right must be "integrated," meaning that their respective rights to damages arise from the same legal source.  See Texas & Pac. Ry. v. Gentry, 163 U.S. 353, 362-63 (1896) (holding aggregation proper where plaintiffs "all claimed under one and the same title").[5]  The application of this standard depends upon the history-laden notion of what constitutes an individual cause of action.[6]  Therefore, a necessary first step is an examination of the configuration of the state-law right at issue.  See, e.g., Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A., 988 F.2d 559, 563-64 (5th Cir. 1993)

---

[5]  See also Insurance Co. of N. Am. v. Chinowith, 393 F.2d 916, 917-18 (5th Cir.) (finding Texas statute on workmen's compensation creates one right of recovery), cert. denied, 393 U.S. 990 (1968);  Kelly v. Hartford Accident & Indem. Co., 294 F.2d 400, 409 (5th Cir. 1961) (five plaintiffs enforcing single wrongful-death cause of action), cert. denied, 368 U.S. 989 (1962); Phillips Petroleum Co. v. Taylor, 115 F.2d 726, 728 (5th Cir. 1940) (multiple plaintiffs suing to enforce mineral lease), cert. denied, 313 U.S. 565 (1941).

[6]  Therefore, this rule is not to be confused with that of joinder under FED. R. CIV. P. 20, which requires that plaintiffs' claims be transactionally related.  The fact that claims arise from the same transaction or occurrence is an insufficient justification to allow aggregation.  See 1 MOORE, supra, ¶ 0.97[3], at 920 ("The appropriateness of aggregation depends upon the nature of the plaintiffs' claims rather than on the source of the right to sue or transactional relatedness of the claims.").

6

(examining Texas state law to determine whether fishermen had common property right in fishing stock harmed by oil spill), <u>cert. denied</u>, 114 S. Ct. 685 (1994) (hereinafter "<u>ANPAC</u>"). Again, the purpose of this inquiry is to determine whether the state law claim creates one right of recovery. <u>Id.</u> at 564.

Another factor that courts long have used to determine whether a claim is common or separate is the apportionment of the award. A claim is more likely to be integrated if the defendant has no interest in the apportionment of an award among the plaintiffs.[7]

Plaintiffs, of course, may have strong interests in the eventual distribution of awards, but the ultimate separability of a claim does not defeat its integrated quality. "Occasionally, plaintiffs seek to enforce a common interest that is separable amongst themselves. In such cases, the common nature of the plaintiffs' interest <u>vis-a-vis</u> the defendant dictates that aggregation is proper." 1 MOORE, <u>supra</u>, ¶ 0.97[3], at 921.[8]

---

[7] <u>See</u> <u>Berman v. Narragansett Racing Ass'n</u>, 414 F.2d 311, 316 (1st Cir. 1969) ("[I]t has long been settled that one factor of considerable importance on the issue of whether the plaintiffs' interests are aggregable is whether the defendant has an interest in how the fund will be apportioned if plaintiffs prevail."), <u>cert. denied</u>, 396 U.S. 1037 (1970). <u>See also</u> <u>Green County v. Thomas' Executor</u>, 211 U.S. 598, 602 (1909) (finding aggregation proper where defendant "has no interest or concern in the proper division of the amount due . . . among those who are entitled to share the proceeds of the verdict."); <u>Gibson v. Shufeldt</u>, 122 U.S. 27, 30 (1887) ("[T]he test is whether they claim it under one common right, the adverse party having no interest in its apportionment or distribution among them . . . ."); <u>The "Connemara"</u>, 103 U.S. (13 Otto) 754, 755 (1881) ("It was a matter of no consequence to the owners of the property saved how the money recovered was apportioned among those who had earned it."); <u>Sellers v. O'Connell</u>, 701 F.2d 575, 579 (6th Cir. 1983) ("An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his shares, the shares of the remaining plaintiffs are increased.").

[8] <u>See</u> <u>Bullard v. City of Cisco</u>, 290 U.S. 179, 188-89 (1933) (aggregation not prevented because recovery from bonds and coupons held in trust

(continued...)

B.

Keeping these standards in mind, we must decide whether joint claims for punitive damages under Mississippi law present a united claim for a common and undivided interest. This question is an issue of first impression on the appellate level in this circuit.[9]

_____

[8](...continued)
ultimately would go to beneficiaries); Clay, 138 U.S. at 479 ("The general principle observed in all is, that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable between themselves, the amount of the joint claim or liability will be the test of jurisdiction.").

[9] District courts in this circuit, however, have disagreed over the question. In Lailhengue v. Mobil Oil Corp., 775 F. Supp. 908, 910-14 (E.D. La. 1991), the court held that punitive damages arising from a single refinery explosion could be "aggregated." The court found that the plaintiffs had a "common and undivided interest" in the damages, as their right to punitive damages arose from a single event or act of conduct (the explosion), the defendant's conduct was the same with respect to each plaintiff, and the plaintiffs had a collective interest in creation of a fund sufficient to deter any alleged misconduct in the future. Id. at 913. Moreover, if the claims were treated as a class action, no individual plaintiff would have the right to assert them individually. Id. at 913-14. Nor would plaintiffs' circumstances affect the award. Id. at 914. In sum, that court viewed punitive damages as a policy-created, public interest owed to the class of plaintiffs as a whole; the award is aimed at deterring wrongful conduct and is conceptually different from compensation for harm to any individual plaintiff. See also In re N. Dist. of Cal. "Dalkon Shield" IUD Prods. Liability Litig., 526 F. Supp. 887, 911 (N.D. Cal. 1981), vacated on other grounds, 693 F.2d 847 (9th Cir. 1982), cert. denied, 459 U.S. 1171 (1983); Martin v. Granite City Steel Corp., 596 F. Supp. 293, 297 (S.D. Ill. 1984).

A second class of cases treats punitive damages as individual awards that are owed to each plaintiff in proportion to their total number. In Granier v. Eparka Shipping Co., No. 94-3990, 1995 U.S. Dist. LEXIS 2569 (E.D. La. Mar. 1, 1995), the court held that no "common and undivided" interest existed for a group of plaintiffs even if their punitive damages claims all arose from the same event, because under state law each plaintiff could raise a separate claim for punitive damages. Id. at *4. That court also relied upon a reading of Lindsey v. Alabama Tel. Co., 576 F.2d 593, 595 (5th Cir. 1978), in which we remanded a class action to state court on the ground that the plaintiff had failed to allege the number of persons in the class, making it impossible to determine the actual amount sought per plaintiff. Significantly, the language of the opinion suggests the court was including the total of the punitive damages in this calculation. Id.; see also Garrett v. Blanton, No. 89-4367 1993 U.S. Dist. LEXIS 12196 (E.D. La. Aug. 27, 1993) (treating punitive damage claims separately and distinguishing Lailhengue and like cases on the ground that they were class actions where plaintiffs joined to enforce common interest), appeal dism'd, 32 F.3d 567 (5th Cir. 1994) (per curiam) (unpublished).

A final class of cases alternatively finds that punitive damages are
(continued...)

We begin by examining the nature of punitive damages.

Punitive damages punish. The almost unanimous rule is that "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981).[10]

Mississippi's controlling law on punitive damages follows the majority rule. According to the Mississippi Supreme Court, a reasonable instruction on the state's law of punitive damages is as follows:

> Punitive damages are added damages awarded for public service in bringing a wrongdoer to account, as an example

---

[9](...continued) either not a common and undivided right or that the defendant's proof of the quantum of damages is insufficient. See Chadwick v. Shell Oil Co., 828 F. Supp. 26, 28 (E.D. La. 1993) (speculating that aggregation might be proper, but refusing to find jurisdiction because of insufficient proof of supporting amount); Joseph v. Shell Oil Co., No. 94-3005, 1994 U.S. Dist. LEXIS 18310 (E.D. La. Dec. 16, 1994) (holding that claim for punitive damages under Louisiana law was not common and undivided and/or amount was speculative); Clement v. Occidental Chem. Corp., No. 94-1315, 1994 U.S. Dist. LEXIS 12387 (E.D. La. Aug. 26, 1994) (same); Becnel v. Marathon Oil Co., No. 94-1838, 1995 U.S. Dist. LEXIS 4860 (E.D. La. April 10, 1995) (same); Anderson v. Shell Oil Co., No. 93-2235, 1994 U.S. Dist. LEXIS 17996 (E.D. La. Dec. 14, 1994) (insufficient proof of quantum).

[10] See also Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 19 (1991) (finding that under most states' laws, "punitive damages are imposed for purposes of retribution and deterrence"); Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974) (Punitive damages "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence."); RESTATEMENT (SECOND) OF TORTS § 908. One commentary states that only the decisional law of Connecticut, Michigan, and New Hampshire recognizes a compensatory function for punitive damages. 1 LINDA L. SCHLUETER & KENNETH R. REDDEN, PUNITIVE DAMAGES § 1.4(B), at 17 & n.3 (2d ed. 1989). A more recent commentary adds Texas but omits New Hampshire. See 1 JAMES D. GHIARDI & JOHN J. KIRCHER, PUNITIVE DAMAGES LAW AND PRACTICE, tbl. 4-1, at 4-47 to 4-52 (1994) (summary table on states' positions on punitive damages). In contrast to the conclusion reached by Ghiardi and Kircher regarding Texas law, however, this court in Estate of Moore v. Commissioner, 53 F.3d 712 (5th Cir. 1995), has held that under Texas state law, punitive damages have no compensatory purpose.

9

to warn and deter others from repeating the same act. They are never awarded to benefit the injured party or as a matter of right, but rather to punish and to compel the wrongdoer to have due and proper regard for the rights of the public.

McGowan v. Estate of Wright, 524 So. 2d 308, 310 (Miss. 1988); see also Wesson v. United States, 48 F.3d 894, 899-900 (5th Cir. 1995) (examining nature of punitive damages under Mississippi law). Mississippi's legislature recently codified this view of the law, fully effective as of July 1, 1994. See MISS. CODE ANN. § 11-1-65 (Supp. 1994).

Punitive damages in Mississippi therefore are fundamentally collective; their purpose is to protect society by punishing and deterring wrongdoing. Id.; see 1 SCHLUETER & REDDEN, supra, §§ 2.0 to 2.2 (examining purposes and policies behind punitive damages). Their focus is not any one individual plaintiff; instead, the award is tailored to the defendant's wealth and wrongdoing. See Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1190 (Miss. 1990) (examining factors that juries may consider in determining quantum of punitive damages award); see also MISS. CODE ANN. § 11-1-65(1)(e) (listing factors for jury to consider). The benefits of the award are meant to accrue to society.

Because punitive damages in Mississippi are not compensatory, they are individual awards in function only. While separate plaintiffs may seek an award in separate cases,[11] the narrow right

---

[11] These individual suits appear functionally separate, since caselaw, albeit limited, supports the argument that previous awards would not limit the ability of subsequent plaintiffs to be awarded further punitive damages. See ABA SPECIAL COMM. ON PUNITIVE DAMAGES, PUNITIVE DAMAGES: A CONSTRUCTIVE EXAMINATION 71-85 (1986)
(continued...)

10

to seek such damages exists only because public policy as expressed through state statutes and the common law so dictate.  See generally 22 AM. JUR. 2D DAMAGES § 734, at 787 (1988) ("So viewed, punitive damages are allowed on grounds of public policy and in the interest of society and for the public benefit.") (footnotes omitted).  An individual's damages or harm is relevant only to assessing the defendant's wrongdoing.[12]

Finally, the general rule is that a plaintiff does not have a claim of right to punitive damages, and "it is always within the discretion of the jury or trial judge to withhold them."  W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 2, at 14 (5th ed. 1984);  see Wirtz v. Switzer, 586 So. 2d 775, 783 (Miss. 1991) ("The award of punitive damages, along with the amount of such, are [sic] within the discretion of the trier of fact.").  In other words, a claim for punitive damages is not by itself an independent tort.  Hence, it is only because of the unique nature of these exemplary awards that they exhibit some of the characteristics of

---

[11](...continued)
(examining the potential for multiple punitive damage award, "[o]ne of the thorniest and most hotly contested issues in punitive damages today"); Andrea G. Nadel, Annotation, Propriety of Awarding Punitive Damages to Separate Plaintiffs Bringing Successive Actions Arising Out of Common Incident or Circumstances Against Common Defendant or Defendants ("One Bite" or "First Comer" Doctrine), 11 A.L.R.4th 1261 (1994) (collecting cases).

[12]  The RESTATEMENT (SECOND) OF TORTS § 908(b), for example, states that "[i]n assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." (Emphasis added.)  Thus, while punitive damages are assessed in part by measuring the harm to an individual plaintiff, that focus occurs because that factor is relevant to the degree of the wrong.  No principle limits the measurement to the harm to one plaintiff where the defendant's actions harmed many.

a separate claim of right.

## C.

Accordingly, while punitive damages do not fall neatly into either the "non-aggregation" caselaw or the "common and undivided interest" exception, the unique nature of these awards requires, at least in Mississippi, that the full amount of alleged damages be counted against each plaintiff in determining the jurisdictional amount. As punitive damages are collective awards, each plaintiff has an integrated right to the full amount of an award. An award's ultimate distribution does not change this result.

Punitive damages are, to use the language of the caselaw, undivided claims of right with a potentially separable award. Here, each of the 512 plaintiffs was empowered to bring a claim for punitive damages separately. The fact that they choose not to pursue their claims individually does not limit each plaintiff's alleged entitlement to the award; it only affects its distribution. The limiting factor here was the plaintiffs' decision to file jointly.

Of course, a defendant's interest in seeing individual plaintiffs' cases fail is greatly affected by the procedural posture of such claims. In class actions or multi-plaintiff suits, the defendant's potential exposure to a large punitive damage award is not affected by the failure of individual claims as long as one plaintiff is successful. Accordingly, in that situation, the defendant has no interest in the distribution of the award, a fact

that has long supported the conclusion that the plaintiff's claims of right are common and undivided.  See, e.g., Berman, 414 F.2d at 316.

Where a defendant faces a series of individual claims, it is affected strongly by the success or failure of each individual claim for punitive damages, because the general rule is that previous awards are not a limiting factor on subsequent awards.  We thus recognize that while plaintiffs generally share an undivided interest in being awarded punitive damages, that interest is not common in the sense that there is one and only one award that they would split equally.

Nonetheless, we do not find that the potential for multiple liability makes the plaintiffs' claims separate.  The seeming anomaly of multiple exposures for punitive damages arising out of the same conduct is justified because of its extreme potential to punish and deter.  See Maxey v. Freightliner Corp., 450 F. Supp. 955, 962 (N.D. Tex. 1978) (Higginbotham, J.) (examining Texas state law), aff'd, 623 F.2d 395 (5th Cir. 1980), reh'g on other grounds, 665 F.2d 1367 (5th Cir. 1982) (en banc).[13]   Such a harsh, and to

---

[13]   In Maxey, the district court examined the problem of punitive damages in the mass torts and products liability area in some detail:

> [W]hen a plaintiff attempts to recover punitive damages urging willful conduct, a defendant feels the pinch of multiple exposure. The pinch is that the amount of an exemplary award is not wholly controlled by the extent of injury suffered by the immediate plaintiff so that multiple cases can indeed by devastating.  See Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2d Cir. 1967). Arguably, substantive right has here outstripped its procedural brother because there is no available device for distribution of an exemplary damage award among all injured.  But because exem- plary damages do not have a compensatory function, difficulty in equitably distributing awards is not the prime problem.  In other

(continued...)

13

some absurd, result is "tolerated as a price of private achievement of a public goal," not because it provides a windfall to individual plaintiffs. Id. The award is not the plaintiffs' but society's.

Finally, under the accepted view of punitive damages as a public good, no aggregation))meaning the addition of separate claims))is necessary, as each plaintiff's share of an award is not added up to exceed $50,000))just as one award does not subtract from a future claimant's entitlement. Instead, the claims, while jointly tried, are treated as belonging to each plaintiff for jurisdictional purposes. In sum, because of the collective scope of punitive damages and their nature as individual claims under Mississippi law, we hold that under Mississippi law the amount of such an alleged award is counted against each plaintiff's required jurisdictional amount.

---

[13](...continued)
contexts, the windfall nature of exemplary awards is tolerated as a price of private achievement of a public goal of deterrence. But pointedly those cases are in procedural contexts which have available devices for preventing deterrence from becoming destruction. This is not to denigrate the decision of the jury. Each jury has before it only one case))it is the aggregate effect of several juries' faithful adherence to the law that poses risk of ultimate destruction. This is true although each award of exemplary damages was by an accurately instructed and wholly fair jury. The hazards presented by separate awards of exemplary damages for design defects common to thousands of products are real and apparent. Understandably, each plaintiff's counsel dons the robes of the public interest. And the premise of the private attorney general's role is that private interests of a plaintiff and the public are parallel. The rub, however, is that after the first award of exemplary damages, that parallelism is lost. Present tort law accepts the idea that manufacturers ought to be checked by deterrent based remedies. Yet we ought not in our quest for public safety lose sight of the obvious))with no products, there are no consumers.

450 F. Supp. at 962.

14

III.

The plaintiffs also raise the issue of the proper burden of proof for measuring a defendant's assertion of the jurisdictional amount. While this issue has not been without some controversy in this circuit, recent caselaw has settled much of it.

A.

While it is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists, Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 253-54 (5th Cir. 1961), we have applied different standards of proof depending upon whether the complaint alleges a dollar amount of damages. Where the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). In order for a court to refuse jurisdiction "it [must] appear to a legal certainty that the claim is really for less than the jurisdictional amount." Of course, if a plaintiff pleads damages less than the jurisdiction amount, he generally can bar a defendant from removal.[14] Thus, in

---

[14] We recently have noted that this rule may allow plaintiffs to manipulate federal jurisdiction if their pleadings do not limit the actual damages they ultimately may collect. De Aguilar v. Boeing Co., 47 F.3d 1404, 1410 (5th Cir. 1995) (hereinafter "de Aguilar II"). Accordingly, we held that in cases where an exact amount has been pled, if a defendant can prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, removal is proper unless the plaintiff shows that at the time of removal he was legally certain not to be able to recover that amount. Id. at 1412. In other words, where the plaintiff's claims can be proved to be of the type that are worth more than $50,000, they can be removed unless the plaintiff can show he is legally bound to accept less.

15

the typical diversity case, the plaintiff remains the master of his complaint.

The converse situation to St. Paul Mercury is where a plaintiff fails to specify the amount in controversy. This situation))not unusual in this circuit, as both Texas and Louisiana state civil procedure disallows damage claims for specific amounts, see TEX. R. CIV. P. 47; LA. CODE CIV. PROC. ART. 893))does not impose the same "legal certainty" test. Instead, "[w]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000." De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993) (hereinafter "de Aguilar I").

We have never listed explicitly what types of proof are acceptable under this standard. Some caselaw, however, guides the district court's analysis. First, a court can determine that removal was proper if it is facially apparent that the claims are likely above $50,000. See de Aguilar I, 11 F.3d at 57; cf. ANPAC, 988 F.2d at 566 (holding, in part, that remand was proper where the amount was not otherwise "facially apparent"). If not, a removing attorney may support federal jurisdiction by setting forth the facts in controversy))preferably in the removal petition, but sometimes by affidavit))that support a finding of the requisite amount. See Garza v. Bettcher Indus. Inc., 752 F. Supp. 753, 763 (E.D. Mich. 1990).

Removal, however, cannot be based simply upon conclusory

16

allegations.  Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992).  Finally, under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time.  ANPAC, 988 F.2d at 565.

Here, plaintiffs dispute whether the district court applied the proper burden of proof necessary to determine the "jurisdictional facts" for removal.  This argument is made in two parts. First, the plaintiffs spill much ink dissecting caselaw in order to argue that this circuit does not have an established standard. This argument is meritless, as de Aquilar I established that a party seeking removal of a claim that does not allege a specific amount need only prove the jurisdictional facts by a preponderance of the evidence.

In the alternative, the plaintiffs argue that the district court erred in applying de Aquilar I by requiring less than "preponderance" proof.  To support this argument, the plaintiffs read the district court's order denying their motion for remand to apply implicitly a "possibility of liability" standard.  They also cite language from the defendants' opposition to the remand that they believe is conclusionary.

The district court did not state explicitly what standard it was applying, but only stated that "the magistrate judge's implicit conclusion that aggregated punitive damages could well exceed $50,000 can certainly not be characterized as 'clearly erroneous' or 'contrary to law.'"  (emphasis added).  A "could well" standard

17

sounds more like a "possibility" standard of proof, rather than a "more likely or not" standard. As such, the district court's conclusion and, hence, its order are based upon an erroneous view of the law.

We need not remand the case, however. The application of our proper standard of review))an issue that we have never directly addressed))allows us to affirm. The procedural posture of this case is similar to a FED. R. CIV. P. 12(b)(6) motion or summary judgment motion. We apply a like standard of review: de novo, applying the same standard of review as should the district court.[15] In this case, where the district court is making the "facially apparent" determination, the proper procedure is to look only at the face of the complaint and ask whether the amount in controversy was likely to exceed $50,000. In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal.[16] We would review that determination in a fashion similar to our FED R. CIV. P. 56 review.

---

[15] We note that the district court here did not make any explicit factual findings, because the review it was engaged in focused solely upon the face of the complaint. Accordingly, FED. R. CIV. P. 52(a) does not apply, and we are not limited in our review of the record. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986) (holding that appellate court fact-finding is not allowed even for determination of de novo question of law; proper procedure is to remand for correct fact-finding).

[16] The efficient procedure is to not require such "summary judgement" proof until after the initial consideration of the face of the complaint. This bifurcation of the process is justified under the general mandate of the rules, FED. R. CIV. P. 1, and the fact that such proof is irrelevant and wasteful if jurisdiction is facially apparent.

18

In this case, the total claim for punitive damages is more likely than not to be for $50,000 or more, as it involves three companies, 512 plaintiffs, and a wide variety of harm allegedly caused by wanton and reckless conduct. A court, in applying only common sense, would find that if the plaintiffs were successful in their punitive damages claim, they would collect more than $50,000. Accordingly, we hold that the face of the complaint supports the assertion of federal jurisdiction.

B.

The plaintiffs also sought to amend their complaint in order to "clarify" the amount in controversy. This argument lacks merit in light of de Aquilar I, 11 F.3d at 57 (holding that amount in controversy may be determined from face of the complaint), and St. Paul Mercury, 303 U.S. at 292 (holding that post-removal events cannot deprive a court of jurisdiction once it has attached). Once the district court found that it had jurisdiction, the jurisdiction is deemed to have vested in the court at the time of removal. An amendment to the complaint limiting damages for jurisdictional purposes cannot divest jurisdiction.

IV.

In conclusion, we hold that in Mississippi, a joint claim for punitive damages by multiple plaintiffs should be assessed against each plaintiff as a whole in determining the jurisdictional amount. Here, a claim for punitive damages against three oil companies for

19

wanton and reckless conduct that caused an oil well explosion, the evacuation of a town, and harm to 512 people is, on its face, more likely than not for more than $50,000. And, no post-petition amendment of the complaint can divest the district court of jurisdiction. We therefore AFFIRM.

**DeMOSS, Circuit Judge, dissenting:**

There is much in the majority opinion with which I agree, but there is more with which I disagree, particularly the ultimate conclusions of the majority regarding removability. I write therefore to register my dissent.

I agree with the majority that the beginning point in determining the propriety of removal of a case from state court to federal court is to look at the "face of the complaint" in state court and apply the "facially apparent" test. Looking at the amended complaint last filed in state court before the notice of removal, I conclude that the complaint was on its face <u>not</u> removable for the following reasons:

    a. All of the defendants in this case are corporations. Under 28 U.S.C. § 1332(c)(1) "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business". The allegations of the amended complaint state that each corporate entity is a "Louisiana corporation", but there is otherwise no allegation as to the state "by which it has been incorporated". Furthermore, one of the defendants, Farrar Oilfield Service and Equipment Co., Inc., is expressly alleged in the amended complaint to have a "principal place of business in the State of Mississippi". That allegation makes this corporate defendant a citizen of the State of Mississippi, which breaks the complete diversity between all plaintiffs and all defendants required under 28 U.S.C. § 1332

21

and violates the requirement of 28 U.S.C. § 1441(b) that none of the defendants be a citizen of the state in which such action is brought.

b.    The amended complaint shows that it was filed on May 20, 1993, and contains express allegations that the well blowout and fire which was the source of plaintiffs' damage claims occurred on the afternoon of May 29, 1990.  The plaintiffs' conclusory allegations of injury and damage on the face of the complaint must be evaluated through the common sense filter of the lapse of almost three years of time between the occurrence of the casualty and the filing of the complaint.

c.    The amended complaint does not contain any express allegation as to the monetary amount of any damages, either actual or punitive.

d.    Exhibit A to the amended complaint sets forth the names of all the various plaintiffs, consisting of approximately 143 family groups of adults and minor children who are appearing through their mothers and next friends.  All of these plaintiffs are alleged to be citizens of the State of Mississippi.  Other than the grouping of these plaintiffs in family groups by last name, there are no allegations in the amended complaint that there is any family relationship between and among all of the plaintiffs.  There are no allegations establishing any criteria for a class action by all the plaintiffs.  There is no allegation that all of the

22

plaintiffs are joint owners of any property nor that any group of the plaintiffs are joint owners of any property.  There is no allegation that all of the plaintiffs are partners in any business activity nor that any group of the plaintiffs are partners in any business activity.  There is no allegation that any of the plaintiffs are shareholders of any corporate entity which was the owner of any damaged property.  And, there is no allegation that any of the plaintiffs joined as plaintiffs in this lawsuit pursuant to an agreement to share recoveries to which they might individually be entitled with any other plaintiffs.

On its face, therefore, the original complaint was not removable because it did not demonstrate complete diversity between plaintiffs and defendants and it did not allege that there was at least $50,000 in controversy in the lawsuit.

I agree with the language of the majority opinion which indicates (i) that it is well settled "that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists," **Gaitor v. Peninsular & Occidental S.S. Co.**, 287 F.2d 252, 253-54 (5th Cir. 1961); (ii) that when the original state court complaint does not specify the dollar amount in controversy, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000"; **De Aguilar v. Boeing Co.** (**De Aguilar I**), 11 F.3d 55, 58 (5th Cir. 1993); and (iii) that multiple plaintiffs are not permitted to add together "separate and distinct demands, united

23

for convenience and economy in a single suit" to meet the requisite jurisdictional amount, **Snyder v. Harris**, 394 U.S. 332, 336 (1969). I turn now to an analysis of whether the removing defendants satisfied their burden of proving the jurisdictional facts.

The notice of removal in this case was filed by one of the defendants, Tri-State Oil Services, Inc.  In its removal petition Tri-State made the following allegations:

  a.  That the case was removable because of complete diversity between plaintiffs and defendants and because there was at least $50,000 in controversy;

  b.  That each of the three corporate defendants "was a corporation organized under the laws of the State of Louisiana, but had ceased to engage in any business activity" at the time of filing suit;

  c.  That "upon information and belief Farrar [one of the defendants] has not been served with a summons and copy of the complaint"; and

  d.  That "R & H [another defendant] is currently unrepresented by counsel but joins in this notice of removal". The notice of removal was signed in behalf of Tri-State Oilfield Service, Inc. by its counsel of record, but contains no signature blank in behalf of defendant R & H.  Likewise, the truth of the facts alleged in the notice of removal are not attested by any affidavit.  The notice of removal did contain a statement that defendants "reserve the right to file additional support for this notice of removal by way of affidavits, memorandum and argument",

24

but, the record does not contain any further affidavits dealing with jurisdictional facts. The plaintiffs timely filed a motion to remand to the state court asserting that there was no showing that the amount in controversy exceeded $50,000. At this point, it seems to me, that there should have been some tender of evidence upon which the district court could have resolved the disputed jurisdictional facts. Both plaintiffs and defendants submitted memoranda of authorities in support of their respective positions, but I can find nothing in the way of a transcript of oral testimony, nor are there any affidavits or other summary judgment type evidence in the record to resolve the disputed jurisdictional facts. In my view the following jurisdictional facts are unresolved:

    a. What happened to the defendant Farrar? Was Farrar ultimately served in the state court proceeding? If so, its joinder would be required in the notice of removal.

    b. What does the allegation in the notice of removal that all defendants have "ceased to engage in any business activity" mean? Have these corporate entities been dissolved? If so, who are the parties to whom assets and liabilities were passed on dissolution and what is the residence of such successors? If they have not been dissolved, where is the principal place of business of each corporation? Proof of these facts regarding corporate status and activity requires at the very least an affidavit of a corporate officer. The general allegations of counsel in the notice of removal are

25

not sufficient.

c.     What is the nature and extent of the property damage and personal injury sustained by each of the plaintiffs?

d.     As between the three defendants, which entity had the operational control and decision-making responsibility of the well site, which would put that entity under a duty to conduct its operations with due regard for the safety of others and render it liable for a gross negligence and reckless disregard finding?  If that entity was Farrar and Farrar has never been served, then Farrar was not before the district court and no punitive damages could be awarded.

All of these jurisdictional facts have been left essentially unresolved.  While there was some sort of a "hearing" before the magistrate judge at which the parties were permitted to argue their positions, no transcript was made of that hearing and no party makes reference to any testimony tendered at that hearing.  The magistrate judge made no specific findings of fact nor conclusions of law, but simply entered an "Order Overruling Motion to Remand" which stated:

> The court having heard and considered the plaintiffs' motion to remand, briefs and arguments of counsel and authorities cited finds that each individual plaintiff maintains a cause of action for punitive damages and that under the circumstances and authorities the motion to remand is not well taken and should be denied.  (Citing cases.)

The cases cited in the magistrate judge's memorandum were two federal district court decisions (one published, one not published) from the Southern District of Mississippi dealing with jurisdic-

26

tional amounts in declaratory judgment actions by an insurance carrier against its insured where there is the potential of a punitive damage claim based on bad faith by the carrier in dealing with the claim. **Allstate Ins. Co. v. Hilbun**, 629 F. Supp. 698 (S.D. Miss. 1988), and **Atlanta Cas. Co. v. Jones**, No. J90-0459(L) (S.D. Miss. Feb. 11, 1991). The third case cited by the magistrate judge, **Lailhengue v. Mobil Oil Corp.**, 775 F. Supp. 908 (E.D. La. 1991), has some factual similarities to the present case (claims for damages from refinery explosion to nearby residents), but relates to a casualty which occurred in Louisiana and would be governed by Louisiana punitive damages law.

The plaintiffs applied for review of the magistrate judge's ruling by the district judge. In deciding not to review the magistrate judge's order, the district court based its decision on the following conclusions of law:

> a. "That in this case, aggregation of punitive damages is proper in determining the issue of whether the amount in controversy requirement for jurisdiction has been satisfied";

> b. "While their claims for compensatory damages are separate and divisible, the court, giving due consideration to the nature and purpose of punitive damages, concludes that the same cannot be said as to plaintiffs' punitive damages claim. Punitive damages are sought for a single wrong to the plaintiffs who thus have a common and undivided interest in punitive damages award"; and

> c. That the "magistrate judge's implicit conclusion

27

that aggregated punitive damages could well exceed $50,000 can certainly not be characterized as `clearly erroneous' or `contrary to law'."  (Emphasis added.)

The district court offered no statutory or common law support for any of these conclusions.

During the pendency of this lawsuit, the Mississippi Legislature adopted a statutory provision dealing with punitive damages, MISS. CODE ANN. § 11-1-65 (Supp. 1994).  The relevant provisions of that statute were made expressly applicable to this and all other cases pending as of July 1, 1993.  Nonetheless, neither the magistrate judge's order nor the district court's order evaluates the impact of the Mississippi statute on jurisdiction in this case.  The majority opinion makes only a passing reference to this statute stating that it "codified" Mississippi law regarding punitive damages.  The majority, however, gives no substantive consideration to the terms and provisions of this statute in arriving at its conclusions that Mississippi regards punitive damages as an "individual award in function only," and that, without regard to any showing of compensatory damage, punitives can be relied upon to satisfy the jurisdictional amount in this case.  Because I believe that **Erie** requires federal courts to give controlling effect to state law in cases where our jurisdiction could be based solely on diversity of citizenship, and because I believe the Mississippi punitive damage statute cannot possibly be interpreted to support the conclusion reached by the majority in this case, I turn to a

28

detailed examination of that statute.[17]

Section 11-1-65 actually changes Mississippi law in at least two important ways. First and most importantly, the statute requires proof by "clear and convincing evidence" of the conduct which is made the subject of punitive damages. While this heightened proof requirement may not be determinative by itself of the availability of punitive damages in this case, it clearly indicates that the recovery of punitive damages will be tested by proof over and above the previously applicable preponderance of the evidence test. Second, the Mississippi statute on punitive damages contemplates a bifurcated process for dealing with actual or compensatory damages, on the one hand, and punitive damages, on the other. Note that the statute expressly requires that the trier of fact "shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages". § 11-1-65(1)(b) (emphasis added). It further states that "if but only if" compensatory damages have been awarded, the court shall commence an evidentiary hearing to determine whether punitive damages may be considered. If the court then determines that punitive damages may be submitted to the trier of fact, then the trier of fact determines "whether to award punitive damages and in what amount". § 11-1-65(1)(d). In addition, the Mississippi statute expressly defines factors which the trier of fact may consider in determining whether to award

---

[17] See generally John F. Corlew, *An Historical Overview of Punitive Damages in Mississippi*, 63 Miss. L.J. 583 (1994).

29

punitive damages and the amounts thereof, which include the nature and extent of damages sustained by the claimant, as well as the financial condition of the party against whom punitive damages are sought.  Finally the Mississippi statute on punitive damages calls for a review by the court to determine the reasonableness of the punitive damages and requires the court to consider "mitigation" of punitive damages by considering civil penalties levied against the defendant for the same conduct in other actions.[18]

It is important also to note what the Mississippi statute on punitive damages does <u>not</u> say.  Nowhere in the statute is there anything that says that there shall be only one single claim for punitive damages arising out of any one set of circumstances.[19] There is nothing in the statute that says that if more than one person sustains compensatory damages from a casualty, all of such persons shall have a joint or common claim against the party guilty

_____

[18]  While these last two statutory provisions, specifying factors to be considered in computing punitive damages, <u>may</u> not be applicable to this case, they are indeed codifications of binding Mississippi precedent.  <u>See</u>, <u>e.g.</u>, **C & C Trucking Co. v. Smith**, 612 So.2d 1092 (Miss. 1992).

[19]  Interestingly, the original house bill, which ultimately became § 11-1-65 contained the following provision in Section 3(d)(iii):

>      (iii)  Only one (1) award for punitive damages may be made against a defendant for the same act, decision, omission or course of conduct.

(H.B. No. 1270, Regular Session, 1993).  But this subpart (iii) was deleted by the Judiciary Committee and does not appear in the final bill as passed.  To my mind, this is conclusive that the Legislature intended that there be multiple claims for punitive damages, such as those allegedly arising out of the well explosion in this case.

of punitive damage conduct. Nowhere in the statute is there any language that says that a punitive damage award would be shared on a per capita basis nor on a pro rated damage basis between several parties who each sustain compensatory damage out of a single casualty. To the contrary, the overall thrust of the Mississippi statute on punitive damages is that each claimant, who proves that he suffered compensatory damages and who proves by "clear and convincing" evidence that a defendant has committed conduct authorizing the recovery of punitive damages, is entitled to a submission to the jury of a punitive damage claim; and subject to the court's review of the reasonableness of the jury's finding, that individual is entitled to the recovery of those punitive damages. Furthermore, nowhere does the statute use the words "joint", "common", "collective", which are the key words relied upon by the district court and the panel majority to justify aggregation of all punitive damage claims by all plaintiffs. Likewise, there is no Mississippi Supreme Court case involving facts similar to the mass tort situation involved in this case where the Mississippi Supreme Court has concluded that there is some jointness, collectiveness or commonality to the claims of the multiple plaintiffs in such actions. Accordingly, from my review of the Mississippi cases and statute on punitive damages, I come to the following conclusions:

     a.   Under Mississippi law, punitive damages are dependent upon and appurtenant to the existence of a recovery of

compensatory damages;[20]

b.     Absent an express holding of the Mississippi Supreme Court that punitive damage claims of multiple plaintiffs are to be determined on a joint or common basis, the plain reading of the Mississippi punitive damage statute contemplates that the punitive damage claim of each claimant will be separate and distinct, just as the compensatory damage claims of that claimant are separate and distinct;

c.     Given the bifurcated procedure for first determining compensatory damages and then determining punitive damages, which is mandated by the Mississippi punitive damage statute, each plaintiff in a multi-plaintiff case who was found to have suffered compensatory damage would be entitled to a separate submission of his claim for punitive damages, rather than a blanket submission of a single issue of punitive damages as to all such plaintiffs; because otherwise, the jury would be deprived of the opportunity to evaluate the differences in character and amounts of compensatory damage which would almost certainly exist between the multiple plaintiffs and which the Mississippi punitive damage statute requires to be considered as an element of fixing each claim of punitive

---

[20]     This same conclusion was reached by another panel of this court in the case of **Greer v. Burkhardt, Inc.**, No. 94-60306 (5th Cir. July 20, 1995), 58 F.3d 1070 (5th Cir. 1995), where on facts and legal proceedings which reached final judgment prior to the adoption of the Mississippi punitive damages statute, the panel reviewed several Mississippi Supreme Court cases and concluded that "in a case of zero actual damages, we believe that Mississippi law does not allow him any punitive damages."

32

damages. On the other hand, the blanket submission of a single issue as to all punitive damages, as inferred by the majority, would result in a lump sum award of a single amount of punitive damages but with no basis in the statute nor in Mississippi common law as to the formula by which such lump sum award would be divided amongst the various multiple plaintiffs. Some may say that the best policy is to divide a lump sum punitive damage award on a per capita basis and others may say that the best way to divide a lump sum punitive damage award is in the proportion of the amount of each individual claimant's compensatory damages to the total of all compensatory damages. But, in any event, the choice is a legislative choice which the Mississippi Legislature did not make in the Mississippi punitive damage statute; and it is a choice which the courts need never reach if they read the Mississippi statute as requiring separate jury findings as to the punitive damages of each individual plaintiff in a multi-plaintiff suit, as it seems to so plainly say.

This is not a class action. Each of the plaintiffs have joined in the original complaint in each of their respective names to assert what the majority clearly recognizes are their respective "separate and distinguishable" claims for compensatory damages. Had there been no allegations regarding punitive damages, **Snyder v. Harris** would clearly be the controlling law and removal from state court to federal court would be valid only as to each plaintiff whose compensatory damages were determined to likely exceed

33

$50,000. The face of the original complaint in state court certainly does not expressly quantify these compensatory damages of each plaintiff and the burden therefore fell upon the removing defendants to demonstrate by a preponderance of the evidence the nature and extent of each plaintiff's injuries and the likely amount of compensatory damages for such injuries. The defendants wholly failed to satisfy this burden. Rather, the defendants focused the attention of the magistrate judge and the district judge on the general allegations regarding punitive damages. Here again, the face of the original complaint contained no express allegation as to the amount of punitive damages which each plaintiff was claiming; and, therefore, the burden fell upon the removing defendants again to establish by a preponderance of the evidence that the quantum of punitive damages which each plaintiff could reasonably expect to receive would produce an amount in controversy exceeding $50,000 when added to the compensatory damage of each respective plaintiff. This burden the defendants wholly failed to satisfy. Rather, the removing defendants argued and the district court concluded that punitive damages are not "separate and divisible" as to each plaintiff, but rather constitutes some sort of a single claim for a "single wrong" in which all plaintiffs have "a common and undivided interest". Additionally, the district court concluded that the "implicit conclusion" of the magistrate judge "that aggregated punitive damages could well exceed $50,000" was not "clearly erroneous". All of these determinations were made by the district court "based simply upon conclusory allegations" in

34

the original complaint or the notice of removal which the panel majority recognizes was not proper. But brushing aside the trial court's errors and applying "common sense" to the task of interpreting "the face of the complaint", the panel majority concludes: (1) "the total claim [singular] for punitive damages [plural] is more likely than not to be for $50,000 or more" and (2) "if the plaintiffs [plural] were successful in their [plural] punitive damages [plural] claim [singular], they [plural] would collect more than $50,000". In my opinion, those conclusions by the majority are in direct conflict with Mississippi statutory and case law in that they purport to make all plaintiffs participate in one single punitive damage claim; and through the semantical device of labeling a punitive damage claim a collective claim for jurisdictional amount purposes, the panel majority avoids the clear mandate of the United States Supreme Court that in suits involving multiple plaintiffs, the jurisdictional amount is to be determined as to each plaintiff, without aggregating claims among the plaintiffs. I respectfully dissent.