Steve PROUTY and Carolyn
Prouty, Plaintiffs,

v.

HOME BUYERS WARRANTY CORPO-
RATION and National Home Insur-
ance Company, Defendants.

No. 3:96CV193LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 3, 1996.

John I. Donaldson, Allred & Donaldson,
Jackson, MS, for plaintiffs.

Michael O'Mara Gwin, Watkins & Eager,
Jackson, MS, for defendants.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, District Judge.

Before the court for consideration is the motion of plaintiffs Steve and Carolyn Prouty to remand this case to the Circuit Court of Madison County, from which it was removed. Defendants Home Buyers Warranty Corporation (Home Buyers) and National Home Insurance Company (National Home) have responded to the motion and the court, having considered the memoranda of authorities submitted by the parties, together with the record in this cause, concludes that plaintiffs' motion to remand must be granted.

This case arises out of defendants' denial of plaintiffs' claim for benefits under a homeowners' warranty policy issued by Home Buyers when plaintiffs purchased their home in 1985 and which provided ten years' coverage to plaintiffs for structural defects. In August 1994, after approximately nine years in their home, a structural engineer inspected plaintiffs' home and, upon discovering several "defects," recommended repairs to the foundation "to restore the structural integrity of the home." Plaintiffs had the repairs performed, and then sought to recover the cost of those repairs, $11,450, under their Home Buyers policy. On February 12, 1996, following defendants' denial of their claim, plaintiffs filed the present suit in the Circuit Court of Madison County, Mississippi. They alleged that Home Buyers and National Home "were and are without a good, sufficient and arguable reason to deny Plaintiffs' benefits under the ... policy," and that defendants "acted in concert in wrongfully and tortiously denying Plaintiffs' claim for benefits." Plaintiffs concluded that "[a]s a proximate result of the breaches of contract, torts and other wrongs committed by the Defen-

dants ..., Plaintiffs have suffered damages." They "demand[ed] judgment of Defendants for all insurance benefits due under said Insurance Policy," and for "pre-judgment and post-judgment interest, attorneys' fees and expenses of litigation in connection with all sums due under said Policy." In their ad damnum clause, plaintiffs reiterated their demand for judgment "in a reasonable sum of actual and consequential damages, attorneys' fees and costs of litigation, together with pre-judgment and post-judgment interest and taxable costs."

Defendants, nonresident insurers, timely removed the case to this court on the basis of diversity jurisdiction, pointing out that the parties are of diverse citizenship and asserting that the amount in controversy exceeds the $50,000 jurisdictional minimum. Defendants maintained that plaintiffs, by having alleged "bad faith" in defendants' denial of benefits, had implicitly asserted a claim for recovery of punitive damages which alone, or when coupled with plaintiffs' further claimed damages, could certainly exceed $50,000. Plaintiffs now have moved to remand since their "out-of-pocket damages" are less than $50,000 and "[n]o exemplary damages are sought in the Complaint."

█ In the Fifth Circuit, where the question presented is whether the amount in controversy requirement for diversity jurisdiction is met, the standards of proof differ depending upon whether the complaint alleges a dollar amount of damages. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995). As the court explained in *Allen,* if the plaintiff has alleged a sum certain that exceeds $50,000, then that amount controls if alleged in good faith and federal jurisdiction may be refused only if it appears to a legal certainty that the claim is really for less than $50,000. *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). Conversely, where the plaintiff fails to allege a specific amount of damages, or alleges an amount of damages less than $50,000, then in order to remove (or to prevent remand after removal), the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000, *id.* (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993) (*De Aguilar I* )). The plaintiff may then avoid federal jurisdiction only by showing that at the time of removal he was legally certain not to be able to recover more than $50,000. *Id.* at 1335 and n. 14 (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir.1995) (*De Aguilar II* )) (if defendant shows by preponderance of evidence that amount in controversy exceeds $50,000, case may be removed unless plaintiff "can show he is legally bound to accept less"). Thus, in the case *sub judice,* the burden is on defendants initially to show *by a preponderance of the evidence* that the amount in controversy does, in fact, exceed the $50,000 threshold for federal diversity jurisdiction. Defendants have not satisfied this burden.

█ The only category of damages quantified by plaintiffs is the $11,450 alleged to have been expended on repairs to their home. And though plaintiffs also seek interest, attorneys' fees and litigation expenses, it is not facially apparent that these amounts would collectively exceed $50,000, *see Allen,* 63 F.3d at 1336 (court should look first to face of complaint to determine whether amount in controversy likely exceeds $50,-000), and defendants have not otherwise undertaken to show—and certainly have not shown by a preponderance of the evidence— that these additional items of claimed "damages" would place the amount in controversy over $50,000.[1] Indeed, defendants' position is not that plaintiffs' actual damages place this case within the sphere of federal jurisdiction, but rather, the premise of their quest for a federal forum is that plaintiffs have implicitly or effectively asserted a claim for punitive damages. Defendants conclude that

---

1. Plaintiffs' computation of damages in their disclosure pursuant to the Justice Expense and Delay Reduction Plan reflects that they seek as damages:
    1. Liquidated damages representing the cost of repair in the amount of $11,450.00.

2. Reasonable attorney's fees and expenses of litigation.
3. Prejudgment interest from and after October 9, 1994 through the date paid at *8%* per annum.

"[c]ertainly if punitive damages are sought then damages can be in excess of $50,000." However, plaintiffs do not purport to seek an award of punitive damages.

Plaintiffs do include in their complaint references to defendants' lack of a "good, sufficient and arguable reason" to deny their claim, and to defendants' "wrongful" and "tortious" denial of their claim for benefits, which allegations normally differentiate between a breach of contract and a "bad faith" breach of contract, *see Blue Cross & Blue Shield of Miss. v. Campbell,* 466 So.2d 833, 842 (Miss.1984) (lack of legitimate or arguable reason distinguishes between ordinary torts and torts which result from gross, callous or wanton conduct), and which further are of a type that are typically accompanied by demands for punitive damages. But nowhere in their complaint do plaintiffs reference or demand punitive damages. And the court is aware of nothing that would require the plaintiffs to seek such damages even if the defendants' conduct might support a punitive damages award.[2] In summary, therefore, the court is of the opinion that since plaintiffs have not made a claim for punitive damages in the complaint (and have not otherwise indicated that they have or will make any such claim), then the court may not legitimately consider such damages in determining the amount in controversy between the parties.[3]

For the foregoing reasons, it is ordered that plaintiffs' motion to remand is granted.

2. Defendants argue that since in the absence of a contract or statute providing therefor, attorneys' fees are generally available under Mississippi law only if punitive damages are appropriate, then implicit in plaintiffs' demand for attorneys' fees is a demand for punitive damages. The correctness of defendants' proclaimed view of Mississippi law on this subject is debatable, as some cases have held or suggested that attorneys' fees are available even in cases where punitive damages are not proper. *See Duggins v. Guardianship of Washington,* 632 So.2d 420, 431 (Miss.1990); *Andrew Jackson Life v. Williams,* 566 So.2d 1172, 1186 n. 13 (Miss.1990). But even if attorneys' fees were only available for conduct that would support a punitive damages award, that would not give rise to the inference urged by defendants since, again, nothing *requires* a plaintiff to seek punitive damages.

3. Defendants repeatedly point out in their response and memorandum that plaintiffs have not disavowed an intention to seek overall damages in excess of $50,000. While that is certainly true, the fact that plaintiffs have not done so cannot, in the circumstances of this case, be held to preclude remand (or, stated otherwise, does not entitle defendants to a federal forum) since defendants have not first satisfied their burden to establish the likelihood that the amount in controversy is really more than $50,000. *See Allen,* 63 F.3d at 1335, n. 14 (citing *De Aguilar II* ) (plaintiff must show he is legally bound to accept less than $50,000 *if* defendant shows by preponderance of evidence that amount in controversy exceeds $50,000). Of course, should plaintiffs in the future seek to amend to claim punitive damages, then the case might then be properly removable, assuming that any such amendment should occur prior to the expiration of one year from the date suit was filed. *See* 28 U.S.C. § 1446(b). If plaintiffs were to seek to amend *after* a year to demand punitive damages, then their implicit representation that this is not a punitive damages case would presumably be considered by the state court in determining whether to allow an amendment.