Tinnie RANDLE, Individuals Listed on Exhibit "A" and John Does 1–50. Plaintiffs

v.

SMITHKLINE BEECHAM CORPORATION D/B/A Glaxosmithkline; Glaxo Wellcome, Inc.; Glaxo Wellcome, PLC; Glaxosmithkline, Inc.; Brian Phillips; Greg Ward; Amy Adams; Sales Representatives John Does 1–10 and Corporate John Does 1–5 Defendants

No. CIV.A. 3:03–CV–746BN.

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 30, 2004.

Mitchell H. Tyner, Tyner Law Firm, P.A., Jackson, MS, for Tinnie Randle, All Plaintiffs, Debra Abbott, Sharon Autry, Nancy Bridges, Brenda Brown, Madeline Brown, Joyce Burton, Tammy Buxton, Mildred Craven, Shelia Craven, William Crosby, Deborah Davis, Danica Dawkins, Judy Dearman, Dorothy Dixon, Deborah Dunn, Terresa Emerson, Noemear Funchess, Nellie Grisham, Teresa Grisham, Winnie Grubbs, Pauline Harper, Toni Hill, Ara Jumper, Aubrey Kinard, Robert Levey, Mabel Murphree, Alice Pannell, Connie Pierce, Jeanine Pray, Hazel Ragen, Thomas Smith, Linda Spencer, Sherry Thomas, Teresa Williams, Johnson Dolores Willis, Lockie York, plaintiffs.

Joseph Jason Stroble, Watkins & Eager, Jackson, MS, for Smithkline Beecham Corporation, fka Glaxo Wellcome, Glaxo Wellcome PLC, Glaxosmithkline PLC, Glaxosmithkline Inc., Brian Phillips, Greg Ward, Amy Adams, defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

Before the Court is Plaintiffs' Motion to Remand. Having considered the Motion, Response, attachments to each, and supporting and opposing authority, the Court finds that Plaintiffs' Motion to Remand is not well taken and should be denied.

### I. Background and Procedural History

The issue and sub-issues of this case arise out of a personal injury action for uses of the recalled drug, Lotronex® ("Lotronex"). All that is necessary for an understanding of this Opinion and Order is a brief recitation of pertinent facts.[1]

In their Complaint, Plaintiffs named both diverse and non-diverse Defendants.

---

1. The facts are more fully developed below under the sections entitled analysis.

The first issue in this case involves the named non-diverse Defendants, Amy Adams, Brian Phillips, and Greg Ward.[2] The Complaint alleges these three Defendants ("Sales Defendants") sold Lotronex, the drug which allegedly caused Plaintiffs' injuries. These three Sales Defendants, and solely they, destroy complete diversity.

The problem is that Sales Defendants have each provided this Court with affidavits in which they proclaim they neither sold Lotronex, nor worked for the company that sold Lotronex. Those affidavits remain uncontradicted. As a result, Defendants argue that Sales Defendants were improperly joined in this action.[3] Consequently, they argue complete diversity exists and this Court has proper jurisdiction.

The second issue concerns the amount of damages Plaintiffs' assert in their Complaint. There are thirty-nine Plaintiffs in this action. Plaintiffs purport to limit each Plaintiff's damages to $74,000, although the Complaint and Motion to Remand are less than decipherable as to exactly how this is so. While Plaintiffs purportedly self-impose this ceiling upon recovery, they seek damages, both compensatory *and punitive*, under numerous theories against numerous corporate and business Defendants. Defendants argue that the number of Plaintiffs, the types of damages sought, and the theories of recovery make it facially apparent that Plaintiffs seek an amount greater than $75,000. Further, Defendants argue that even if it is not facially apparent Plaintiffs seek an amount greater than $75,000, similar drug-litigation cases from around Mississippi demonstrate that Plaintiffs seek such an amount.

## II. Introductory Analysis

The issue before the Court is whether the requirements of 28 U.S.C. § 1332 are met, so that this Court can retain jurisdiction. § 1332 provides for diversity jurisdiction in the federal courts, but only when two requirements are met. First, the parties must be citizens of a different states, in that they are completely diverse. *Id.* Second, the amount in controversy must be greater than $75,000. *Id.*

Both of those requirements are at issue in this case. First, this Court must an-

---

**2.** Under 28 U.S.C. § 1441(a), "[f]or purposes of removal...the citizenship of defendants sued under fictitious names shall be disregarded." Based on the provisions of § 1441(a), the Court in this Opinion and Order disregards John Does referenced in the Complaint. *Gray ex rel Rudd v. Beverly Enterprises–Mississippi, Inc.*, 261 F.Supp.2d 652, 656 (S.D.Miss.,2003). The parties submitted no arguments pertaining to these referenced Defendants.

**3.** The Court notes that the United States Court of Appeals for the Fifth Circuit, sitting en banc, recently adopted the term "improper joinder" over the more popular and well-known term "fraudulent joinder." *Smallwood v. Illinois Cent. R.R. Co.*, No. 02–60782, 2004 WL 2047314 at *1 n. 1 (Sept. 10, 2004). This adoption has left this Court and others in a quandary when choosing which term to use. As Judge Jolly stated in his dissent from the majority opinion,

It is also odd that the majority has jettisoned the term 'fraudulent joinder', used by all of our cases for five decades and by the treatises, for the term 'improper' joinder. Apparently the majority has concluded that it better serves its new way of looking at an established concept. We note, however, that 'improper joinder' was the term used by the Supreme Court in *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914), which happens to be the source of authority for the majority's new rule.

*Id.* at *18 n. 1. Although the United States Supreme Court used the term "fraudulent joinder" and not "improper joinder" in the *Cockrell* opinion, it has not directly addressed the issue of which term is preferable. While this Court finds it odd the Fifth Circuit adopted the term "improper joinder", it will nevertheless use the term since the *Smallwood* court explicitly adopted the term.

swer whether three particular defendants were improperly joined to destroy complete diversity. Second, this Court must address whether Plaintiff's seek more than $75,000, despite language used in the Complaint which seemingly disavows any attempt to recover more than this amount. The Court addresses these two requirements in chronological order below.

### III. Improper Joinder Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 815 (5th Cir. 1993), *cert. denied,* 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of improper joinder, "it has the burden of

proving the fraud." *Laughlin,* 882 F.2d at 190.

To establish improper joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003) (citing *Griggs v. State Farm Lloyds,* 181 F.3d 694, 698 (5th Cir.1999)).

### IV. Analysis—Improper Joinder

The question in this case is whether there is any reasonable basis on which Plaintiffs would be able to establish a cause of action against the Sales Defendants in state court.[4] *See Smallwood v. Ill. Central Railroad Co.,* 385 F.3d 568, 572–73 (2004) (adopting this phrasing of the issue and rejecting all others). The easily reached answer is no.

In Plaintiffs' Motion to Remand, they make the following generic statement: "Plaintiffs file their Complaint...against Brian Phillips and Greg Ward[5] who are pharmaceutical sales representatives and

---

4. As noted above, this is the second of two possible avenues by which defendants can prove a defendant was improperly joined. The Court notes that Plaintiffs' actions appear dangerously close to falling under avenue one, which is actual fraud in the pleading of jurisdictional facts.

  "Actual fraud" is defined as the *"intentional* perversion of truth for the purpose of inducing another in reliance upon it...to surrender a legal right [here, the right to be in federal court because of complete diversity]." BLACK'S LAW DICTIONARY 594 (5th ed.1979) (emphasis added). There are two reasons this Court is pursuing avenue two rather than avenue one. First, while Plaintiffs' actions make this Court very suspicious the faulty pleading was intentional (because it is simply beyond-the-pale to believe someone would sue another for selling a drug, name him in a Complaint, cause him to defend himself in a court, name him *again* in a Motion to Remand, and yet not realize that

person does not even sell the drug on which he or she is basing his suit), this Court does not have sufficient information to determine if Plaintiffs had the "intent" necessary for actual fraud. Second, there is a dearth of case law discussing this first avenue, and hence, little guidance on what must be present before a finding of actual fraud in pleading jurisdictional facts in a motion to remand. In fact, to this Court's knowledge, all cases discussing improper joinder have approached the issue under the second avenue. Therefore, this Court believes it is most prudent to approach this case under the second avenue, where it is readily apparent this case belongs in federal court.

5. While Plaintiffs listed Amy Adams as a Sales Defendant in their Complaint, they did not name her in the Motion to Remand. The Court is not aware of the reason for this discrepancy.

adult resident citizens of the State of Mississippi... and were at the time of filing the lawsuit, residents of Mississippi. Thus, diversity of jurisdiction does not exist." *See* Motion to Remand, ¶ 2, dated June 27, 2003. Plaintiffs proceed to state they "nam[ed] two *responsible* non-diverse parties, namely Brian Phillips and Greg Ward." *Id.* at ¶ 10 (emphasis added).

The problem for Plaintiffs is that Defendants, in their Response in Opposition to Plaintiffs' Motion to Remand, correctly state that "[t]he uncontradicted affidavits of Phillips, Ward, and Adams [Sales Defendants] establish that they were never employed by Glaxo Wellcome Inc., the entity that manufactured and marketed Lotronox at all times material to Plaintiffs' Complaint, and never marketed, promoted, or distributed Lotronex." *Id.* at ¶ 2, dated July 15, 2003.[6]

To date, Plaintiffs have only contradicted these affidavits with conclusory statements contained in their Complaint and Motion to Remand. They have submitted no evidence to contradict the affidavits. *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 263 (5th Cir.1995)(holding that, when faced with a improper joinder question, courts should look to "summary judgment-type evidence such as affidavits and deposition testimony" under Fed. R.Civ.Proc. 56(e)). Plaintiff has had ample time to provide this Court with evidence. This Court, on July 24, 2003, granted Plaintiffs' Motion for Additional Time to Submit Rebuttal to Defendant's Response to Plaintiff's Motion to Remand, which extended the due date for the Rebuttal to

August 15, 2003. Plaintiffs never filed their Rebuttal.

■ Conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not improperly joined. *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 392–93 (5th Cir.2000). That is all we have here. And a court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Badon,* 224 F.3d at 394 (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994))(emphasis omitted).

The Sales Defendants have no place in this action; they are not responsible for Plaintiffs' alleged injuries. It would be a factual and legal impossibility to maintain an action against Sales Defendants in state court, and they should be dismissed with prejudice from this action. Consequently, the first requirement of diversity jurisdiction, complete diversity, exists in this action.

## V. Amount in Controversy Requirement

The remaining requirement of diversity jurisdiction is whether the amount in controversy requirement of § 1332 is met. § 1332(a)(1) states "[t]he district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

---

6. Each affidavit is straightforward and each contains several identical statements, including:

1. [c]ontrary to allegations contained in Plaintiffs' Complaint, I am not and have never been employed by, nor have I ever been an agent of, Glaxo Wellcome Inc.

2. [c]ontrary to the allegations contained in Plaintiff's Complaint, I have never sold, marketed, promoted, or distributed the medication Lotronex® (Alosetron Hydrochloride).

*See* Exhibits A, B, & C to Defendants' Response in Opposition to Plaintiffs' Motion to Remand, ¶¶ 4–5.

There are two ways a court can determine if the amount in controversy is met. First, removal is proper if it is *facially apparent* from the complaint that the claims are likely to be above $75,000. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) (citation omitted). Second, removal may be proper even though the amount in controversy is *not facially apparent.*

### A. Facially Apparent Determination

There are several ways by which it can be "facially apparent" damages exceed $75,000.[7] Generally it will be "facially apparent" because plaintiffs, in their Complaint, plead a specific amount of damages greater than $75,000. *See Id.* That is the easy scenario, as that amount will control if made in good faith. *Id.*

The more difficult scenario is when, as applied by the Court of Appeals for the Fifth Circuit in *Allen*, "common sense" dictates it is "facially apparent" that the jurisdictional amount is met. The *Allen* court held that when plaintiffs *do not plead* a specific amount of damages, applying "common sense" can make it "facially apparent" plaintiffs seek more than $75,000. *Id.* at 1336. Under the "common sense" test in *Allen*, courts should analyze factors such as the number of (corporate) defendants, the number of plaintiffs, and the type of harm(s) alleged.[8] *Id.* Courts analyzing these factors can then determine whether the amount in controversy will, more likely than not, exceed $75,000. *Id.* In *Allen*, the number of corporate defen-

dants, the number of plaintiffs, and the presence of punitive damages made it more likely than not that the jurisdictional amount was met. *Id.* The *Allen* Court explicitly stated

> [i]n this case, the total claim for punitive damages is more likely than not to be for [$75,000] or more, as it involves three companies, 512 plaintiffs, and a wide variety of harm allegedly caused by wanton and reckless conduct. A court, in applying only *common sense,* would find that if the plaintiffs were successful in their punitive damages claim, they would collect more than [$75,000]. Accordingly, we hold that the face of the complaint supports the assertion of federal jurisdiction.

*Id.* (emphasis added).

At least two United States District Courts within the Fifth Circuit and in Mississippi have taken the "common sense" test in *Allen* and applied it in situations in which the plaintiff *did plead* a specific amount of damages less than the jurisdictional amount. *Agnew v. Commercial Credit Corp.*, No.Civ.A. 4:02CV47LN, 2002 WL 1628537 at *1–3 (S.D.Miss. July 11, 2002)(Lee, J.)(implicitly applying a "common sense" test by using *Allen* to decide the case and then stating "[t]here is no doubt" the jurisdictional amount is met); *Smith v. Associates Capital Bank*, No.Civ. A.1:99CV301PA, 1999 WL 33537131 (N.D.Miss. Dec.6, 1999) (Pepper, J.)(directly quoting the "common sense" block-quote above when holding that the jurisdictional amount was met). In those two cases, the

---

**7.** This Court does not purport to provide an exhaustive list of the ways it might be "facially apparent" damages exceed $75,000. Rather, this Opinion does attempt to identify those methods that have recurred most frequently in case law.

**8.** This Court recognizes that the *Allen* court did not explicitly title this approach the "com-

mon sense" test. Rather, it simply said that "common sense" dictated the result in that case. Since the time of *Allen*, district courts have followed approach in *Allen* using various verbal formulations. In an effort to simplify the language used when following *Allen*, this Court refers to the approach in *Allen* as the "common sense" test.

district courts found that although plaintiffs explicitly stated they sought *both punitive and actual* damages in an amount not to exceed $74,999.00, it was nevertheless "facially apparent" plaintiffs sought more than $75,000. *See Agnew,* 2002 WL 1628537 at *1, 3; *See also Smith,* 1999 WL 33537131, at *3, 5. The district courts reasoned that "common sense" instructed the courts that aggregated punitive damages would elevate the value of the claims over the jurisdictional threshold.[9] *See Agnew,* 2002 WL 1628537, at *3; *See also Smith,* 1999 WL 33537131, at *5.

## B. Not Facially Apparent Determination

The second way in which the amount in controversy must be determined is when it is not facially apparent that the claims are likely to be above $75,000. *Allen,* at 1335. In that scenario a removing attorney may support federal jurisdiction by setting forth the facts in controversy that support a finding of the requisite amount. *Id.* The Fifth Circuit has instructed it is preferable for the needed facts to be set forth in the removal petition, although they may be set forth by affidavit. *Id.* This Court has stated that the needed facts could be set forth by the "presentation of factually similar Mississippi cases in which plaintiffs were awarded sums in excess of the federal jurisdictional limit." *Beichler v. Citigroup, Inc.,* 241 F.Supp.2d 696, 701 (S.D.Miss. 2003); *See also Smith,* at *6 (holding the jurisdictional amount was met when defendants cited two factually similar cases in which jury verdicts significantly exceeded the federal minimum jurisdictional amount). But removal may not be based simply upon conclusory allegations. *Allen,* at 1335.

## VI. Analysis—Amount in Controversy Requirement

■ Plaintiffs cryptic (and perhaps misleading) pleading unnecessarily confuses this case. Plaintiffs repeatedly argue the value of their claims does not exceed the jurisdictional amount. *See e.g.,* Motion to Remand, ¶ 5 (stating "[P]laintiffs' claims do not exceed $75,000 . . . the [C]omplaint cannot be removed"). This indicates that Plaintiffs are limiting damages so that each individual's claim for compensatory damages, *plus* the total amount of punitive damages, would not exceed $75,000 per Plaintiff. But then Plaintiffs use language that indicates something quite different. That is, Plaintiffs state they "seek monetary damages *for injuries* in this case in an amount not to exceed $74,000." [10] Complaint, ¶ 19(d) (emphasis added). That is an entirely different proposition from the first. In Mississippi, monetary damages *for injuries* are compensatory damages, not punitive. Punitive damages, rather, are to punish. *Allen,* at 1333; *See also Wesson v. U.S.,* 48 F.3d 894, 899 (5th Cir.1995) (stating "[u]nquestionably, the law of Mississippi is similar to that of other states; punitive damages are not awarded to compensate a plaintiff for an injury. 'The purpose of punitive damages, as often stated by this Court, is to punish a tortfeasor' ") (quoting *State Farm Mut. Auto. Ins. Co. v. Daughdrill,* 474 So.2d 1048, 1052 (Miss.1985)(responding to a certified question by the Fifth Circuit)); *See also Kelite Products v. Binzel,* 224 F.2d 131 (5th Cir.1955).

Thus, the Court is faced with one of *two* possible prayers for relief. One, Plaintiffs intend to limit damages, both punitive and

---

9. In Mississippi, the total amount of punitive damages awarded to all plaintiffs is attributed to each plaintiff for purposes of determining the amount in controversy. *Allen,* at 1335.

10. *See also* Motion to Remand, ¶ 7 (stating "the *injuries* sustained by the plaintiffs have all been evaluated and none of them exceeds $74,000.00 in value")(emphasis added).

compensatory, so as to exercise their right to remain below the jurisdictional limit. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (holding that a plaintiff whose does not "desire to try his case in federal court. . .may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove"). The other is that Plaintiffs intend to limit damages for injuries, and hence only compensatory damages, to $74,000. This would mean that Plaintiffs did not plead for a specific amount of punitive damages. This Court believes Plaintiffs intended the latter scenario.

This places this Court precisely between the situation in *Allen,* the Fifth Circuit case in which plaintiffs *did not plead* a specific amount of any type of damages, and *Agnew* and *Smith*, the district court cases in which plaintiffs *did plead* a specific amount of both compensatory and punitive damages. Here, plaintiffs pled a specific amount of compensatory damages, but they did not plead a specific amount of punitive damages. *See generally* Complaint, ¶ 67(A) (stating the Court should "[d]etermine each Defendants' liability for punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein pursuant to Miss.Code. Ann. § 11–1–65").

Punitive damages could be considerable in this case. There are thirty-nine plaintiffs and at least five corporate or business defendants. Add to this the fact that Plaintiffs make serious allegations. In their own words

> At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health

and safety in conscious disregard of the foreseeable harm caused by these persons. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiffs' individual rights, and hence punitive damages are appropriate.

*Id.* at ¶ 25.

■ Given that plaintiffs seek as much as $74,000 per Plaintiff in compensatory damages, "common sense" tells this Court that when the potential amount of total punitive damages is added to each claim, it is "facially apparent" that, more likely than not, the jurisdictional amount is met.

This potentially leaves one remaining matter. Different standards of proof apply in remand actions depending upon whether plaintiffs do or do not plead a specific amount of damages.

Generally, the applicable burden of proof is the same: a preponderance of the evidence. There is, however, a difference. When a plaintiff pleads a specific amount of damages, once a removing party has demonstrated by a preponderance of evidence that damages exceed $75,000, the non-removing must pass the "legal certainty test." That is, the non-removing party must prove to a legal certainty (i.e., that they are legally bound to accept less) the claims are less than the requisite jurisdictional amount. When a plaintiff does not plead a specific amount of damages, the inquiry ends once the removing party demonstrates it is more likely than not that the jurisdictional amount is met. That is, the "legal certainty" test does not then apply to the non-removing party. *See Allen,* at 1335–36.

The matter remains because it is not clear which standard applies in this case, in which Plaintiffs pled a specific amount of compensatory damages but not punitive damages. This Court believes the "legal

certainty" test does not apply. This is because 1) Plaintiffs *did not plead* a specific amount of punitive damages, 2) because this decision relies on those damages, and 3) because Defendants have met their burden by demonstrating it is more likely than not that punitive damages will account for the jurisdictional amount being met. Hence, the inquiry should end there.

 But even if the inquiry did not end there, Plaintiffs could not demonstrate they are legally bound to claim less than the jurisdictional amount. The primary reason is that under the pleading rules of Mississippi, the *ad damnum* clause of the Complaint may be amended even as late as at the close of evidence, before the case is presented to the jury. This factor fits squarely within the situation *De Aguilar II* envisioned, stating:

> Plaintiff's 'legal certainty' obligation might be met in various ways; we can only speculate, without intimating how we might rule in such [a] case. Plaintiff's state complaint might cite, for example, to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment. *Absent such a statute* [e.g., Mississippi], '[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints..."

*De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995) (*De Aguilar II*) (emphasis added). Plaintiffs did not file a binding stipulation or affidavit, and they have submitted no other evidence which indicates they will be legally bound to accept less than the jurisdictional amount. In fact, and as noted above, they did not even file a Rebuttal to Defendants' Response in Opposition to the Motion to Remand. They have not and cannot demonstrate they are legally bound to remain below the jurisdictional amount.

Because it is facially apparent Plaintiffs claims meet the jurisdictional threshold, this Court needs not address Defendants arguments directed towards a "not facially apparent" situation.

For the reasons above, this Court holds that the facts of this case meet the diversity jurisdiction requirements of § 1332. Therefore, the Motion to Remand is not well taken and should be denied.

## IV. Conclusion

IT IS THEREFORE ORDERED that the Motion to Remand [6–1] is not well taken and is denied. It is further ordered that Sales Defendants, Amy Adams, Brian Phillips, and Greg Ward, are dismissed with prejudice from this action.