Enrique RODRIGUEZ, Jr., Patricia Sifuentes Rodriguez, Individually and as Next Friend of Minors Chrystal Rodriguez Sifuentes and Enrique Rodriguez Sifuentes, Enrique Rodriguez, Sr., Diamantina Rodriguez, Individually and as Next Friend of Minor Trine E. Rodriguez, Georgina Rodriguez, as Next Friend of Minors Jose T. Rodriguez Martinez and Mario A. Rodriguez Martinez, Plaintiffs

v.

CASA CHAPA S.A., de C.V., Enrique Rodriguez, Sr., as the Administrator of the Estate of Jose Trinidad Rodriguez Santana, Defendants

No. DR–04–CA–34.

United States District Court, W.D. Texas, Del Rio Division.

Sept. 22, 2005.

Michael J. Maloney, Houston, TX, Earl M. Herring, Eagle Pass, TX, Nancy Johnson Hebert, Thomas Wade Demary, Houston, TX, Joe Ruiz, Eagle Pass, TX, Alfonso Nevarez, San Antonio, TX, Cgc Ritchie, Eagle Pass, TX, for Plaintiffs.

Ricardo G. Cedillo, San Antonio, TX, for Defendants.

## ORDER

LUDLUM, District Judge.

Pending before the Court are the following Plaintiffs' motions: motion for a rehearing on the motion to remand and motion to vacate the court's order on the application of Mexican law (Docket Entry # 47), filed March 23, 2005; and the amended motion for rehearing on the motion to remand and amended motion to vacate the Court's orders on the application of Mexican law and striking of pleadings (Docket Entry # 49), filed March 23, 2005; and motion for leave to file plaintiffs' second amended complaint, subject to Plaintiffs' motion for remand (Docket Entry # 50), filed March 23, 2005. The Court has reviewed the Plaintiffs' motions and the responses thereto filed by Defendant Servi Chapa on August 8, 2005, and is of the opinion that the motion for a rehearing and the motion to vacate shall both be **DENIED**.

## FACTS

This case arises out of a two-vehicle collision that occurred on Highway 2, between Piedras Negras and Ciudad Acuna, Coahuila, Mexico, in November of 2000. Jose Trinidad Rodriguez Santana was driving one of the vehicles, a pick-up truck, in which his brother, Plaintiff Enrique Rodriguez, Jr., was a passenger. An employee of Defendant Servi Chapa was driving the other vehicle involved, a delivery truck, owned and operated by Servi Chapa. Rodriguez, Jr. suffered serious injuries and Trinidad Rodriguez died as a result of the accident.

Enrique Rodriguez, Jr. is a Texas resident, as was Trinidad Rodriguez. Enrique Rodriguez, Sr., the father of both previously mentioned men, and the wives and children of the Rodriguez brothers are residents of the State of Texas, with the exception of Jose and Mario Rodriguez, who are residents of the State of California. Servi Chapa is a Mexican corporation with its principal place of business in Monterrey, Nuevo Leon, Mexico.

Enrique Rodriguez, Jr., Enrique Rodriguez, Sr., in his individual capacity, and the wives and children of the Rodriguez brothers filed a tort action against Servi Chapa and Enrique Rodriguez, Sr., as Administrator of the Estate of Trinidad Rodriguez ("the Estate") in the District Court of Maverick County, Texas in September of 2002. An answer was never filed by the Estate and the Plaintiffs never moved for default judgment. However, Enrique Rodriguez, Sr. "as Administrator of the Estate of Jose Trinidad Rodriguez Santana" filed a cross-claim against Servi Chapa in April 2003. This cross-claim was signed by the same attorney who signed the Plaintiffs' complaint and listed as counsel two of the three law firms listed as counsel on the complaint.

In early September 2003, Enrique Rodriguez, Jr. testified at his deposition that his brother had not swerved into the other lane and that he did not think his brother had acted negligently.[1] Also in early September 2003, an amended complaint was filed, containing a statement that the attorney[2] for Enrique Rodriguez, Sr., as Ad-

---

1. Servi Chapa's driver had testified in his deposition, however, that Trinidad Rodriguez had swerved into the other lane.

2. The Maloney Law firm and the Herring Law firm are the attorneys for some of the Plain-

tiffs and for Rodriguez, Sr., in his individual capacity and as administrator of the Estate. Pleadings, however, do not name the individual attorney who offered to receive service of process on behalf of the Estate.

ministrator of the Estate, had agreed to accept service of process, thereby waiving service of citation of process. In October 2003, the Plaintiffs and the Cross–Plaintiff Estate filed objections on relevancy grounds to Servi Chapa's request for production of Trinidad Rodriguez's last will and testament, application for probate or any other documents relating to the handling of the Estate since his death.

On March 23, 2004, Servi Chapa received Plaintiffs' Designation of Expert Witnesses and expert witness reports. Servi Chapa alleges that the expert reports conclusively showed that the Plaintiffs were not planning to introduce any evidence showing liability on the part of the Estate and that Servi Chapa's counsel only then reviewed the pleadings in detail and discovered that the Plaintiffs and the Estate were represented by the same attorneys. Servi Chapa claims that its counsel assumed one law firm was representing the Plaintiffs and the other two were representing the Estate before this point. After searching the Maverick County court records, Servi Chapa also discovered that an administration of the Estate had never occurred.

On April 19, 2004, Servi Chapa filed its Notice of Removal to this Court, alleging that the Estate had been fraudulently joined as the Plaintiffs had no real intention of seeking judgment against the Estate. Servi Chapa further argued that the one-year statute of limitations for removing a diversity jurisdiction case should be tolled because Servi Chapa was not able to ascertain that the case was removable during the one-year limitations period due to the Plaintiffs' misrepresentations that En-

rique Rodriguez, Sr. had been appointed Administrator of the Estate and the Plaintiffs further claims that they intended to seek a judgment against the Estate for the negligence of Trinidad Rodriguez.[3] Following notice of removal, Enrique Rodriguez, Sr. filed an application to be appointed Administrator of the Estate[4] and the Plaintiffs filed a motion to remand the case to state court, arguing that the joinder of the Estate was not fraudulent because there was still a possibility of recovery against it and that the notice of removal was not timely filed.

In December 2004, this Court entered a show cause order ordering Plaintiffs' attorneys to show cause why they should be permitted to continue to represent Enrique Rodriguez, Sr. as both a Plaintiff (in an individual capacity) and a Defendant (as the purported Administrator of the Estate). An oral hearing was scheduled, at which all adult parties were ordered to appear. The parties briefed the issue and this Court conducted an oral hearing as scheduled, at which all the individual adult Plaintiffs were represented by counsel, but failed to personally appear. At the hearing, counsel for Plaintiffs requested leave to amend the pleadings. However, Plaintiffs did not attempt to file amended pleadings until March of 2005. The Court issued an order denying the Plaintiffs first motion to remand on February 23, 2005. In said order, the Court struck all pleadings allegedly filed on behalf of the Estate and denied the motion to substitute Joaquin L. Rodriguez as attorney for the Estate, in place of Plaintiffs' attorneys Michael J. Maloney, Earl

---

3. At the oral arguments in December 2004, Plaintiffs' attorneys repeatedly argued that they had no intentions of suing the Estate, but conceded that the wording of the complaint did list the Estate as a Defendant being sued by the Plaintiffs.

4. The Plaintiffs state that Enrique Rodriguez, Sr.'s application to be appointed Administrator of the Estate had not been filed earlier due to an "oversight" by their counsel.

Herring, and Alfonso Nevarez. On that same day, the Court ordered the application of Mexican law to the case at hand.

On March 21, 2005, the Plaintiffs provided the Court with a copy of their notice of interlocutory appeal to the Fifth Circuit. Two days later, on March 23, 2005, the Plaintiffs filed a motion for rehearing on the motion to remand and to reconsider the order applying Mexican law. Later that day, the motion was filed in an amended form. The Court held all pending matters in abeyance until the Fifth Circuit had the opportunity to rule on the Plaintiffs' appeal. On July 29, 2005, the Court received, from the Fifth Circuit, a judgment dismissing the interlocutory appeal, based upon a motion by the Appellants, the Plaintiffs in this matter.

## I. ANALYSIS: REMAND

The Plaintiff's motion for rehearing on the remand asserts that the Court's order of February 23, 2005, should be vacated for the following reasons: 1) the Court's finding of fraudulent joinder was incorrect due to a) a failure by Servi Chapa to meet its burden of proof, b) an inaccurate reliance by the Court on fraud and misrepresentation, and c) reliance on invalid precedent; and 2) because diversity of citizenship does not exist in this case, the Court is powerless, absent jurisdiction, and the case should be remanded.

### 1. Fraudulent Joinder

 As stated in the Court's order, filed February 23, 2005, Title 28, United States Code, Section 1332(a)(2) provides that federal district courts have original jurisdiction over cases between "citizens of a State and citizens or subjects of a foreign state" when the amount in controversy exceeds $75,000.00.[5] Further, Title 28,

United States Code, Section 1441(b) states that such a case, though originally brought in state court, may be removed to federal court "only if none of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." (emphasis added). A party moving the court to assess whether joinder is fraudulent and thus, improper, bears a heavy burden. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. 1981). "In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Id.* (citations omitted).

### A. Burden of Proof

 The Court must evaluate all factual allegations in the light most favorable to the Plaintiffs and resolve all contested issues of substantive fact in favor of the Plaintiffs. *Keating v. Shell Chemical Co.*, 610 F.2d 328, 333 (5th Cir.1980). The Plaintiffs in this cause allege that Servi Chapa has not proven that the Plaintiffs have made misrepresentations about where the parties were domiciled. Further, the Plaintiffs allege that Servi Chapa has failed to prove that there is any possibility of recovery by Enrique, Jr., and his wife against the estate. However, these contentions run afield of the actual issue at hand. The question to be considered is whether Enrique Rodriguez, Sr., as Administrator of the Estate, was improperly joined.[6] Any questions of domicile have, obviously, been settled.

---

5. The parties agree that the amount in this case clearly exceeds $75,000.00.

6. The Fifth Circuit has recently adopted "improper joinder" as the more appropriate mon-

The inquiry remains whether Servi Chapa has proven that the Plaintiffs would be able to recover against Enrique, Sr., or that there was outright fraud in the Plaintiffs' pleadings of jurisdictional facts, showing that Enrique, Sr., was improperly joined in this matter to defeat diversity jurisdiction. The Plaintiffs' attempt to narrow the inquiry down to only one prong is incorrect. The Court has already addressed in a previous order that the relevant prong to this discussion is the first or "actual fraud" prong. The Plaintiffs fail to discuss this prong in their argument showing that Servi Chapa failed to meet its burden.

Nevertheless, the Court will continue to elucidate its finding that Servi Chapa did meet its burden, *infra*, throughout the course of this opinion.

## B. Inaccurate Reliance on Fraud and Misrepresentation

In this section of their argument, the Plaintiffs attempt to persuade the Court that the first prong of the test for improper joinder, whether there was outright fraud in the jurisdictional facts, only addresses whether the Plaintiffs lied about where they live. Though the Plaintiffs promulgate a lengthy rhetoric in support of this assertion, it remains, at best, a bald assertion, devoid of legal citation.

The Plaintiffs cite the case *B., Inc. v. Miller Brewing Co.*, to support the avowal that the Court must limit itself to lies based upon the residency of the parties. 663 F.2d at 549. However, this case does not support the Plaintiffs' proposition. Though this prong of the inquiry is captioned in terms of whether there has been "outright fraud in pleading jurisdictional facts" the courts have not held that this inquiry is solely limited to deception about where a party resides.

The Fifth Circuit has repeatedly declined to define this first prong of the well-established test for improper joinder. Most every case pertaining to improper joinder in this circuit has been determined by applying the second prong of the test, inability of the plaintiffs to establish a cause of action against the non-diverse party. One case began addressing the issue in a footnote, but still relied upon the second prong in making a decision. *Randle v. SmithKline Beecham Corp.*, 338 F.Supp.2d 704, 707 n. 4 (S.D.Miss.2004). In this note, Judge Barbour points out that, though his case might fall under this first prong, there is no guidance for the courts on what the first prong requires to support a finding of improper joinder by actual fraud in the pleading of jurisdictional facts. *Id.* (stating "to this Court's knowledge, all cases discussing improper joinder have approached the issue under the second" prong). As Judge Barbour began an analysis of this prong in terms of the plain meaning and common usage of the terms in the first prong of the test, so this Court will proceed to analyze improper joinder on this novel issue.

■ "Fraud" is defined as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." BLACK'S LAW DICTIONARY (8th ed.2004). "Actual fraud" is defined as "[a] concealment or false representation through a statement or conduct that injures another who relies on it in acting." *Id.* "Fraud," however, remains an ever-wavering concept, dependent upon contemporary societal

---

iker for the concept formerly identified as "fraudulent joinder." *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 571 n. 1 (5th Cir.2004). Although the terms substantively carry the same meaning, improper joinder is more consistent with the statutory language and thus preferred. *Id.*

views of intentional misrepresentations. *See U.S. v. Bruce,* 488 F.2d 1224, 1229 (5th Cir.1973) (suggesting that "[e]ssentially, a scheme to defraud is measured by a non-technical standard. It is reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." (internal citations omitted)); *Weiss v. U.S.,* 122 F.2d 675, 681 (5th Cir.1941) *cert. denied* 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (observing that "the law does not define fraud; it needs no definition; it is as old as falsehood and as versable as human ingenuity."); *White v. Union Producing Co.,* 140 F.2d 176, 178 (5th Cir.1944) (asserting that "[f]raud vitiates everything it touches, it is difficult to define; there is no absolute rule as to what facts constitute fraud ...". A "fact" is defined as "[s]omething that actually exists; an aspect of reality." BLACK'S LAW DICTIONARY (8th ed.2004). A "jurisdictional fact" is defined as "a fact that must exist for a court to properly exercise its jurisdiction over a case, party, or thing." *Id.* This definition likewise seems inadequate in explaining the facts under which improper joiner can be found.

■ Though the Plaintiffs are correct in asserting that a lot of courts have alluded to the first prong by simply suggesting that because a suspect party did not lie about his residence, then the question of improper joiner rests on the second prong of the test. *See Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003) (stating baldly that because none of the parties dispute the questionable party is a Mississippi resident, the analysis of improper joiner rests on the second prong of the test); *LeBlanc v. Georgia–Pacific Corp.,* No. 04–2335, 2005 WL 1657131, at *2 (W.D.La. July 14, 2005) (asserting that there has been no allegation of fraud in the pleading of jurisdictional facts, *"e.g.* a fraudulent

allegation that one party is a citizen of Louisiana when that fact is demonstrably false," leading the court to analyze the second prong of the test); *In re Silica Products Liability Litigation,* No. 1553, 2005 WL 1593936, *16 (S.D.Tex. June 30, 2005) (asserting that the defendants are alleging actual fraud in the jurisdictional pleadings of the plaintiffs' claims of silica-related injuries, as the damages are relevant to the amount-in-controversy issue). Though residency is one such jurisdictional fact, the test is "actual fraud in pleading jurisdictional *facts* " and the Court thinks it would be too limiting to narrow the entire test down to the one jurisdictional *fact* of residency. *See Bonvillion v. Barranco,* No. 1:05–CV–172, 2005 WL 997315, *1 (E.D.Tex. April 12, 2005) (analyzing that there is no dispute over the non-diverse party's state of residence *and* no allegation of fraud in the pleadings, which leads the court to consider the second prong). Because the Fifth Circuit has specifically said that the test is based upon jurisdictional facts, the Court is rejecting the restrictive interpretation propounded by the Plaintiffs in this case. *See Boone v. Citigroup, Inc.,* 416 F.3d 382, 388 (5th Cir.2005) (interpreting the language expansively by stating that there is no allegation of fraud in the "drafting of the complaint" so the question of improper joiner will not turn on the first prong of the test).

The Court will not attempt to discover the various ways in which the first prong of the test can be met, but underscores the fact that the two main jurisdictional considerations for diversity jurisdiction are the residency of the parties and that the amount-in-controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). Nevertheless, the Court finds that such actual fraud in the pleading of jurisdictional facts can encompass other facts proximately leading to jurisdictional concerns. Lying to establish

a putative party as a "strawman" to defeat jurisdiction is a jurisdictional issue contained within the pleadings.

■ In the above-styled case, the Court found that the Plaintiffs intentionally misrepresented to Servi Chapa that Enrique Rodriguez, Sr. had been appointed Administrator of the Estate. However, no attempt was made to have Rodriguez, Sr. appointed until after Servi Chapa filed a motion to remove the case to federal court, after the Court conducted a hearing wherein the Court explained the serious concerns regarding the joinder and dual representation of the Estate, and the Court issued its orders on February 23, 2005.[7] At this, the proverbial eleventh hour in a jurisdictional sense, Rodriguez, Sr. was only appointed Temporary Executor of the Estate, using the same attorneys to represent both the Plaintiffs, including Plaintiff Rodriguez, Sr., and the Defendant Rodriguez, Sr. as Executor of the Estate. In any conception of the term "fraud," lying to defendants about the representation of an estate is most certainly "fraudulent." Furthermore, Servi Chapa relied upon this false assertion to their detriment, nearly losing the opportunity to complain about improper joinder due to the secrecy of the representation of the Estate and the Estate's role in this lawsuit. The Court finds that this conduct rises to the level of "actual fraud."

Additionally, the evidence is overwhelming that the Plaintiffs had no real interest in gaining a judgment against the Estate until the action was removed. Plaintiffs never sought discovery from the Estate through any representative. When the Estate failed to file an answer to the complaint, the Plaintiffs did not seek any default judgment against the Estate. Even today, the Estate has failed to respond to any motion before the Court for consideration, through any Administrator. The deposition of Enrique Rodriguez, Jr., stating that he did not believe his brother, the decedent, acted negligently prior to or during the accident in question, further undermines the late claims of a valid theory of recovery against the Estate as a Defendant in this matter. The Court is convinced that the shift in strategy has emanated from the Plaintiffs' ploy to defeat jurisdiction.

The sole purpose of urging a cause of action against the Estate, after the Plaintiffs had already failed to do so in any appreciable way at the state level, was to prevent federal diversity jurisdiction. The Plaintiffs never even sought to appoint an administrator to the Estate until they wanted to destroy jurisdiction in federal court. The Plaintiffs, of which Rodriguez, Sr. is but one, well-knew that having one Texas defendant would destroy diversity. The actual fraud perpetrated by the Plaintiffs with the purpose of defeating federal jurisdiction most certainly falls into the ambiguous category that is "outright fraud in pleading jurisdictional facts," as required to show improper joinder. *Miller Brewing*, 663 F.2d at 549.

## C. Reliance on Invalid Precedent

Plaintiffs argue that the Court improperly construed *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 98, 42 S.Ct. 35, 66 L.Ed. 144 (1921), and *Rock Island & Pacific Ry. Co. v. Schwyhart*, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473 (1913). Though the Plaintiffs struggle to distinguish the two cases from the case at hand, they spare no paper in their attempt.

---

7. The Court also had serious concerns that an individual suing the Estate was making "legal" decisions and contracting on behalf of the Estate without probate court appointment or approval.

In *Wilson,* the court held that lack of intent to obtain a judgment against a non-diverse defendant can amount to improper joinder. The Plaintiffs suggest that *Wilson* was distinguished by *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). In *Mecom,* the court held that averment and proof that resident and nonresident defendants sued for the purpose of preventing removal is not, in and of itself, tantamount to an allegation that the joinder was fraudulent. *Mecom,* 284 U.S. at 189, 52 S.Ct. 84. The Court reads this argument as stating that improper joinder is more than simple averment and proof that certain defendants were sued merely to prevent removal. In this case, Servi Chapa has shown much more than simple averment.

It is a combination of strong, if not curious, facts that show the Plaintiffs had no interest in recovering from the Defendant Rodriguez, Sr., as Administrator of the Estate, or the Estate itself. These factors are stated in full, *supra* subsection B, but one factor that jumps out immediately is that the Plaintiffs were proceeding in this case using the same attorneys for the Plaintiffs and the Defendant Rodriguez, Sr. It is not a mere allegation, as outlined in *Mecom,* that leads this Court to believe improper joinder has occurred.

What the Plaintiffs fail to entertain at all in their motion is the fact that the Court found *actual fraud.* Additionally, the fact that Plaintiffs did not seek appointment of an Administrator for the Estate until the case was removed to federal court, after a hearing before the Court and the filing of the order issued by the Court denying the Plaintiffs' original motion to remand, strongly suggests that no one was interested in recovering from the Estate, which

the Plaintiffs admit likely has no assets.[8] The Court is not persuaded by the Plaintiffs' allegations that *Mecom* is more befitting to this case than *Wilson,* and adheres to the logic stated in its earlier order on this matter.

The Plaintiffs also struggle in their motion to distinguish *Rock Island* from the above-styled case. In *Rock Island,* the court held that a plaintiff has an absolute right to join a liable defendant, regardless of whether this defendant will have the means to pay such liability. 227 U.S. at 193, 33 S.Ct. 250. The Plaintiffs argue this holding to the, perhaps, illogical extreme, by stating that a plaintiff's intentions for joining a defendant are totally irrelevant. Once again, the Plaintiffs manage to completely avoid the fact that the Court found *actual fraud* in the joinder of Defendant Rodriguez, Sr., as Administrator of the Estate, having the same counsel as a Plaintiff suing himself as a Defendant in this case. The Court finds the fraud perpetrated in this matter to be a relevant and proper inquiry when determining improper joinder. The Court's earlier decision does not hinge on whether the Estate could pay a liability, should one be assigned. However, the Court's decision does hang on the idea that there is no intention on the part of the Plaintiffs to seek judgment against the Estate, and may have abandoned this claim by not pursuing an earlier opportunity for judgment to be entered.

**2. Remand Absent Jurisdiction**

For the aforementioned reasons, the Court finds that the Court does have original jurisdiction over this matter, as the Defendant Rodriguez, Sr., as the Administrator of the Estate, was improperly joined

---

8. In fact, the lack of capital in the Estate has been cited by the Plaintiffs as the reason that the Estate and Rodriguez, Sr., as Administrator of the Estate, should be represented by the very same counsel as the Plaintiffs.

in this matter. Therefore, as the Court retains jurisdiction, the motion for remand shall be denied.

## II. ANALYSIS: MEXICAN LAW

■ Plaintiffs ask the Court to vacate an order, filed February 23, 2005, granting Servi Chapa's motion for application of Mexican Law. Plaintiffs aver that they were not given sufficient opportunity to file a response to Servi Chapa's motion because the Court had previously granted a motion by the Plaintiffs requesting that the decision on the application of Mexican Law be held in abeyance until the jurisdictional issue, see *supra* part I, had been decided. The Plaintiffs charge that, although the order simply states that the decision should be held in abeyance, that the accompanying motion asked that a briefing schedule be issued after the jurisdictional issue was decided but before the application of law issue was decided. Therefore, the Plaintiffs assert that the entire order should be set aside.

The Plaintiffs had every opportunity to respond to Servi Chapa's motion on application of law and did so on October 20, 2004. The Court never issued an order giving the Plaintiffs extra opportunities to file additional motions. As it stands, the Plaintiffs requested the opportunity to file a response to the aforementioned motion and to exceed the page limit. This motion was granted by an order filed on October 20, 2004, and the Plaintiffs filed their extensive motion on that same day. The Court, in consideration of the issue, did not need any further information from the parties to rule on Servi Chapa's motion. Plaintiffs' argument that they did not have enough time to respond is meritless.

## III. ANALYSIS: VACATE ORDER STRIKING PLEADINGS

Finally, the Plaintiffs make a quick mention in the conclusion of their motion of a request for the Court to vacate the order striking all pleadings made on behalf of the Estate. The Plaintiffs fail to cite reason or law for their request. The Court's order is well-founded and will not be stricken from the record based on such a de minimis demand.

## IV. ANALYSIS: LEAVE TO FILE SECOND AMENDED COMPLAINT

The Plaintiffs file an opposed motion for leave to file their second amended complaint subject to the Plaintiffs' motion for remand. Essentially, the Plaintiffs are filing this second amended complaint to finally serve Rodriguez, Sr., as Temporary Executor of the Estate. The Court is denying the Plaintiffs' motions for remand and is still striking all pleadings purportedly made on behalf of the Estate as stricken from the record. Appointing Rodriguez, Sr. as Executor of the Estate only creates further problems in this case when a Plaintiff is suing himself as a Defendant Executor. For these reasons, the Plaintiffs' motion for leave to file a second amended complaint is **DENIED**.

## ORDER

It is hereby **ORDERED** that the Plaintiffs' motion for remand and the amended motion addressing the same are **DENIED**. It is further **ORDERED** that the Court's order of February 23, 2005, on this matter is incorporated herein by reference and remains a binding order in this Court.

It is further **ORDERED** that the Plaintiffs' motion to vacate the Court's order on the application of Mexican law and the amended motion addressing the same are **DENIED**. It is further **ORDERED** that the Court's order of February 23, 2005, on this matter is incorporated herein by ref-

erence and remains a binding order in this Court.

It is further **ORDERED** that the Plaintiffs' motion to vacate the Court's order striking pleadings on behalf of the Estate is **DENIED**.

It is further **ORDERED** that the Plaintiffs' motion for leave to file a second amended complaint is **DENIED**.